**UNITED STATES ex rel. John JOHNSON a/k/a Jay Johnson**

v.

**Harry RUSSELL.**

**Misc. No. 4100.**

United States District Court,
E. D. Pennsylvania.

Feb. 10, 1970.

Benjamin Lerner, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for petitioner.

Paul R. Michel, Asst. Dist. Atty., Philadelphia County, for respondent.

## OPINION

HIGGINBOTHAM, District Judge.

On October 11, 1966 relator, John Johnson's case was called for trial in the County Court of Philadelphia, Criminal Division. Mrs. Carolyn E. Temin of the Defender Association of Philadelphia was appointed to represent relator, apparently "on the spot," a situation which she protested to the presiding judge, the Honorable Leo Weinrott:

> "There is a limit to the preparation I can do on the spot and I will ask that this case not be charged today because frankly, *I don't know anything about it and I am completely unprepared for it.*" [Emphasis added] (Notes of Testimony, County Court of Philadelphia, Criminal Division, August Sessions, 1966, p. 2 hereinafter "Trial N.T.")

Despite Mrs. Temin's plea, "some time" later in the day, indeterminable from the Trial Notes of Testimony, page 5, relator's case went forward. After the Commonwealth rested its case, relator changed his plea to guilty, and was sentenced to four and a half to ten years in the State Correctional Institution. Trial N. T., pp. 19–21, 29. That the case proceeded, with a denial of the continuance, and resulted in the sentencing and incarceration of relator has led to the present petition for writ of habeas corpus.

By his petition, relator raises two issues: (1) denial of right to appeal, and (2) "late appointment" of and thus "inadequate and ineffective counsel" at trial. At an evidentiary hearing held before me on November 5, 1969, counsel for relator added a third contention: (3) "whether the record at Mr. Johnson's trial * * * fails to show that Mr. Johnson's change of plea was made knowingly, understandingly, and voluntarily as required by the Supreme Court of the United States recent decision in Boykin v. Alabama [395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274]." Notes of Testimony,

habeas corpus hearing, p. 5, hereinafter habeas N. T.

I shall deal with relator's contentions *seriatim*.

## I.

Relator first asserts that he was denied his right to appeal. At the hearing before me, Assistant District Attorney, Paul R. Michel stated:

"It is conceded by the respondent that the petitioner was never told of his right to appeal, and in that sense he is entitled to whatever relief grows out of that.

"Of course it was a guilty plea, and I take it he does not wish to appeal directly from the guilty plea proceeding. What he really wants to do is to further pursue post conviction collateral attack which he is doing now. So, I would suggest that although we concede that he was denied his right to appeal in the sense he was never told of it, that it is now a [moot] point and need not be pursued at this hearing." habeas N. T. p. 11.

■ If relator prevails on either his second or third issue, he will be entitled to a new trial. If he does not prevail, appeal from a valid guilty plea will remain. And this—for what it is worth—respondent concedes. On this first issue, then, I direct counsel for relator and respondent to submit a form of decree consistent with the District Attorney's concession.

## II.

■■ "The claim of ineffective counsel due to tardy appointment is a serious constitutional challenge which may not be lightly dismissed." United States ex rel. Chambers v. Maroney, 408 F.2d 1186, at 1196 (CCA 3, 1969). The *Chambers* case, *supra*, and the earlier groundbreaking case of United States ex rel. Mathis v. Rundle, 394 F.2d 748 (CCA 3, 1968) established that, in the Third Circuit, the belated appointment of counsel is inherently prejudicial, and that this fact alone presents a prima facie case of denial of effective counsel. Thereafter the burden rests upon State prosecuting authorities to establish by appropriate means that the defendant was not, *in fact*, prejudiced.

■ I have reviewed the complete transcripts of relator's initial trial and sentencing before Judge Leo Weinrott on October 11, 1966 and of his Post Conviction hearing before Judge Charles L. Guerin, Jr. on November 27, 1967. Out of an excess of caution I granted relator an evidentiary hearing on November 5, 1969. From all sources I am firmly convinced that the Commonwealth has fully met its burden of establishing that relator was not in fact prejudiced by the belated appointment of Mrs. Temin to represent him. I find that relator was not denied the effective assistance of counsel.

The Trial Notes of Testimony reveal that Lawrence Sokoloff, the victim of the robbery positively identified relator as the culprit after describing in great detail what relator was wearing on the day of the crime. Trial N. T. pp. 6–10. When asked by Judge Weinrott, "Is there any question in your mind that this is the man that did the thing you said?" Sokoloff replied: "No question whatsoever because he was less than a foot away from me when he covered me." Trial N. T. pp. 9 and 10.

Police Officer Donald Green and Detective Matt Tenuta then testified about the arrest of relator and the recovery of the stolen money, in large part from relator's pocket. Trial N. T. pp. 14–19. At this point in the trial the Commonwealth rested and the defendant changed his plea to guilty.

Before me Mrs. Temin stated that "after hearing the Commonwealth's evidence, it was my opinion that *no defense* that we could put on *would possibly prevail*, and that the defendant would do himself at least some good by changing his plea at that time rather than waiting to be found guilty by the court." [emphasis added] habeas N. T. pp. 55 and 56. And again Mrs. Temin said that "after

hearing the Commonwealth's evidence, there wasn't anything further I thought I had to know about the case in order to suggest a guilty plea for the defendant." habeas N. T. p. 58.

The Post-Conviction Notes of Testimony (hereinafter Post-Conviction N. T.) repeat these same themes at greater length. See pp. 10–13, 16.

The positive identification of relator by the robbery victim, the testimony of the arresting officer and the investigating detective, and full opportunity for cross-examination led Mrs. Temin to the opinion that "no defense that we could put on would possibly prevail." I find that her advice to relator that he change his plea to guilty was competent, effective legal counsel and that relator was not prejudiced thereby. Relator's second contention is thus unavailing and without merit.

### III.

Finally, relator argues that his plea of guilty must be set aside because the trial judge failed to ascertain of record that relator fully understood the nature and consequences of his plea or that relator's guilty plea was voluntary.

■ Admittedly relator did not raise this issue before the state post-conviction hearing court, and arguably I could dismiss relator's third contention for failure to exhaust state remedies. 28 U.S.C.A. § 2254. But bearing in mind that the exhaustion doctrine is one of comity and not jurisdiction and that Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L.Ed.2d 274 (1969), on which relator relies, was handed down subsequent to relator's post-conviction hearing. I have examined the record of the state proceedings and the evidentiary hearing here and have focused on the merits of relator's *Boykin* argument. Relator's reliance on Boykin v. Alabama, *supra*, which held:

"It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an af-

firmative showing that it was intelligent and voluntary. * * *"

is misplaced in light of United States ex rel. Hughes v. Rundle, 419 F.2d 116, 118 (CCA 3, 1969). In that case the United States Court of Appeals for the Third Circuit held that "the doctrine enunciated in *Boykin* should not be applied retroactively here."

Because *Boykin* is not retroactive, and in light of the statement by relator's counsel—"we have not raised the pre-Boykin question of whether this was an involuntary guilty plea" (Habeas N. T. pp. 87 and 88)—I could find relator's third contention unavailing and stop.

■ In our circuit United States ex rel. McCloud v. Rundle, 402 F.2d 853 at 857 (CCA 3, 1968) teaches that:

"In the absence of an adequate record indicating that the trial court has properly ascertained whether a guilty plea was knowingly and voluntarily entered, it is incumbent upon the federal habeas corpus court to make this determination on the basis of all the relevant facts and circumstances."

The *McCloud* court placed upon the Commonwealth "the burden of proving that appellant's guilty pleas were voluntary."

■ A later Third Circuit case, United States ex rel. Crosby v. Brierley, 404 F.2d 790 (CCA 3, 1968), states the rule of our Circuit on Voluntariness of guilty plea as follows:

"In the absence of an adequate record at arraignment as to the factual basis on which the plea was entered, it becomes necessary to examine thoroughly the 'totality of circumstances' on a case by case basis, with the Commonwealth having the burden of proof on the issue."

The Court continues, if the relator

"* * * did understand the nature and consequences of his plea of guilty, he is entitled to no relief, irrespective of the trial court's failure to conduct an inquiry into the factual basis of the defendant's knowledge and under-

standing of the technical plea entered."

■ The transcript of relator's trial before Judge Weinrott reveals that relator's change of plea come about in the following way (at pp. 19, 20):

Mrs. Temin: "The defendant will change his plea, Your Honor."

The Court: "You explain everything to him."

By Miss (sic Mrs.) Temin:

Q: "Mr. Johnson, is it true at this time after hearing the Commonwealth's case you wish to change your plea to guilty?"

A: "Yes, I do."

Q: "And have you been offered anything by myself or the district attorney to change your plea?"

A: "No."

The Court: "You know you have a right to in this case. [sic: after "to" may well have been said words to the effect: a complete trial and decision by me] you even have a right to be tried by jury. You understand that, don't you?"

The Witness: "Yes."

The Court: "And Miss (sic Mrs.) Temin is representing the individual.

"I have not offered to do anything because you are changing your plea.

\* \* \* \* \* \*

You understand that?"

The Witness: "Yes, Sir."

In cross-examination testimony before me, relator admitted that he had pleaded guilty to criminal charges of homicide and robbery in two previous criminal trials. (habeas N. T. pp. 81 and 82) It seems fair to conclude that relator was familiar with the nature and consequences of a guilty plea prior to his trial before Judge Weinrott.

Moreover, in his testimony before the post-conviction court, relator acknowledged that he was aware of the effect of his guilty plea: (Post Conviction N. T. p. 6)

"Q: Did you know what you were doing when you changed your plea from not guilty to guilty Did you know you were admitting certain facts and throwing yourself on the mercy of the court?"

"A: *I knew at that time, yes*, but my only reason for pleading guilty, we didn't have a chance to discuss the case and I didn't know what to do after that. When she told me to plead guilty, I pleaded guilty." [Emphasis added.]

I find relator's words, after the first six, to lack credibility. In testimony before me he was evasive and contradictory, and altogether lacking in credibility. In post-conviction testimony, Mrs. Temin answered the conclusion of relator's above-quoted remark (Post-Conviction N. T., pp. 16 and 17):

"After I heard the Commonwealth's evidence I had *further discussion with defendant* as to what his defense was \* \* \* and I am sure that I would not have advised him to enter a plea of guilty if I had in any way felt that I had no basis on which to give this advice."

Earlier (Post-Conviction N. T., p. 12) Mrs. Temin answered this question: "Was entry of the plea of guilty decided upon in the final instance by Mr. Johnson himself?" A: "Yes, I would never force any client of mine to enter a plea of guilty."

On the basis of the facts which emerged at relator's post-conviction hearing and his evidentiary hearing before me, I find that relator "did understand the nature and consequences of his plea of guilty," that such guilty plea was knowingly and voluntarily entered as seen in the "totality of circumstances," and that therefore relator is entitled to no relief.

Relator's "ineffective counsel" and *Boykin* arguments have been found to lack merit and relator is entitled to no relief thereon. It is conceded that he was never told of his right to appeal.

Counsel for relator and for respondent will submit a form of decree consistent with this concession.

It is so ordered.

There is no probable cause for appeal.

When there has been a final disposition of the matter, the Clerk of this Court is directed to return to the Clerk of the Court of Quarter Sessions, Philadelphia County, all records and transcripts in the state proceedings against relator which are received and docketed in this Court.

Thus, if no appeals are timely taken, the records and transcripts will be forwarded after termination of appeal time; if appeals are taken, the records will be returned after the matter has been ultimately adjudicated within the federal court system.

I am appreciative of Mr. Benjamin Lerner accepting this appointment without compensation and would like to note for the public record my regard for his perceptive and most diligent representation of the relator.