Philip MEYERS

v.

Frank D. GILLIS, Superintendent, et al.;
the Attorney General of the State of
Pennsylvania; the District Attorney of
Bucks County, Appellants.

No. 95–1850.

United States Court of Appeals,
Third Circuit.

Argued June 24, 1996.

Decided Aug. 23, 1996.

Troy E. Leitzel (argued), Office of the
District Attorney, Doylestown, Pennsylvania,
for Appellants.

Thomas A. Bello (argued), Philadelphia,
Pennsylvania, for Appellee.

Before ALITO, McKEE, and GARTH,
Circuit Judges.

**OPINION OF THE COURT**

ALITO, Circuit Judge:

This is an appeal from an order of the
district court granting Philip Meyers habeas
corpus relief pursuant to 28 U.S.C. § 2254.
Without determining whether the "presumption
of correctness" found in 28 U.S.C.
§ 2254(d)(8) had been overcome, the district
court concluded, contrary to the state court's

finding, that there was no factual basis developed prior to the entry of Meyers' guilty plea. Concluding that the absence of an on-the-record factual basis violated Pennsylvania Rule of Criminal Procedure 319, the district court granted habeas relief.

We hold, first, that Meyers did not rebut the statutory presumption of correctness. Further, following well-established and uniform authority from numerous other courts of appeals, we hold that the Due Process Clause of the Fourteenth Amendment to the United States Constitution does not require an on-the-record development of the factual basis supporting a guilty plea before entry of the plea. Rather, due process requires only that the plea be voluntary and intelligent. Thus, the failure of a state court to elicit the factual basis for the plea on the record before it is entered does not in itself provide an independent ground for habeas corpus relief under 28 U.S.C. § 2254. We therefore reverse and remand for further proceedings consistent with this opinion.

I.

In July 1981, petitioner/appellee Philip Meyers ("petitioner" or "Meyers") killed Hugh Daily. Within a few days, Meyers was charged with criminal homicide and robbery. The robbery charge was subsequently dismissed.

On October 21, 1981, Meyers pleaded guilty to second-degree murder before Judge Rufe in the Pennsylvania Court of Common Pleas. The transcript of this proceeding was destroyed, apparently pursuant to a Bucks County record-retention policy, and the transcript is no longer available. On November 9, 1981, Judge Rufe sentenced petitioner to life imprisonment. The transcript of the sentencing still exists and is part of the record. See App. 3–20.

On November 30, 1981, Meyers filed a motion for withdrawal of his guilty plea and for appointment of new counsel. In January 1982, the Clerk of the Court of Common Pleas of Bucks County acknowledged receipt of petitioner's motion. The motion was not acted upon, however, for many years.

In October 1988, Meyers filed a petition for post-conviction relief in the Court of Common Pleas. After petitioner's attorney made several amendments to the petition, Judge Rufe conducted evidentiary hearings in May and December of 1989. In August 1991, Judge Rufe denied the petition for post-conviction relief on two alternative grounds. First, he held that the petition was without merit. Second, he concluded that the petition was untimely and that granting Meyers relief would unfairly prejudice the Commonwealth. See 42 Pa. Con. Stat. § 9543(b) ("petition shall be dismissed if it appears at any time that, because of delay in filing the petition, the Commonwealth has been prejudiced either in its ability to respond to the petition or in its ability to re-try the petitioner").

Meyers appealed to the Superior Court of Pennsylvania. In October 1993, that court affirmed the judgment of the Court of Common Pleas. The Superior Court did not address the merits of the petition. Rather, it held, pursuant to § 9543(b), that the petition was untimely and that granting relief would unfairly prejudice the Commonwealth. App. 120–21. Petitioner's application for allocatur in the Pennsylvania Supreme Court was denied without comment in April 1994.

In November 1994, Meyers filed an application for federal habeas corpus relief under 28 U.S.C. § 2254. The petition contained three grounds for relief: (1) "conviction was the result of an unknowing and involuntarily entered guilty plea;" (2) "denial of petitioner's right to a meaningful appellate review, his right to due process, and equal protection under the law;" and (3) "denial of petitioner's right to effective assistance of counsel." The district court initially dismissed the petition for failure to exhaust available state remedies. On petitioner's motion, the court vacated its order and directed the Commonwealth to file an answer.

In April 1995, the district judge scheduled an evidentiary hearing, and in May 1995, the court appointed counsel to represent petitioner. The hearing was held in July 1995. In September 1995, the district court granted petitioner habeas relief. Specifically, the court vacated Meyers' conviction and sen-

tence and ordered that he be released from custody unless the Commonwealth entered into a new plea agreement with him or afforded him a trial. The court found that "the record unequivocally establishes that Meyers entered his guilty plea prior to the factual basis for the plea being established," and the court concluded that it "must, out of an abundance of caution and with great reluctance, follow the above authority [i.e., Pennsylvania caselaw applying Pennsylvania Rule of Criminal Procedure 319] and allow Meyers to withdraw his plea." Dist. Ct. Op. at 16–19. Although Meyers raised other grounds for relief, the district court expressly declined to consider them. Dist. Ct. Op. at 16. The respondents appealed from the district court's order and obtained a stay of the order pending appeal. We now reverse.

## II.

A. As mentioned, the district court found that Meyers pleaded guilty in October 1981 prior to a development of the factual basis supporting his plea. Although 28 U.S.C. § 2254(d)(8) was not cited or discussed by the district court, this provision should have furnished the starting point for the district court's inquiry. Title 28 U.S.C. § 2254(d)(8) provides that a state court's factual determinations generally "must be 'presumed to be correct' unless [they are] not 'fairly supported by the record.'" *Pemberthy v. Beyer*, 19 F.3d 857, 864 (3d Cir.) (quoting 28 U.S.C. § 2254(d)(8)), *cert. denied*, — U.S. —, 115 S.Ct. 439, 130 L.Ed.2d 350 (1994); *see also Purkett v. Elem*, — U.S. —, —, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) ("In habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are 'not fairly supported by the record.'") (quoting 28 U.S.C. § 2254(d)(8)).[1] The statute "requires the

federal courts to show a high measure of deference to the factfindings made by the state courts." *Sumner v. Mata*, 455 U.S. 591, 598, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982). Thus, the question in a federal habeas proceeding is not whether the federal courts agree with the state court's factual finding, but whether that finding is fairly supported by the record. *E.g., Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.Ct. 843, 849–50, 74 L.Ed.2d 646 (1983). If the state court's finding is fairly supported by the record, then the petitioner must "establish by convincing evidence that the factual determination by the State court was erroneous." 28 U.S.C. § 2254(d); *Hubbard v. Jeffes*, 653 F.2d 99, 102 (3d Cir.1981) ("a habeas petitioner, in order to overcome state court factual determinations, must demonstrate 'by convincing evidence' that the state proceeding was inadequate or the determinations clearly erroneous"); *see also Wainwright v. Witt*, 469 U.S. 412, 435, 105 S.Ct. 844, 858, 83 L.Ed.2d 841 (1985); *Sumner v. Mata*, 449 U.S. 539, 550, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981); *Reese v. Fulcomer*, 946 F.2d 247, 255 (3d Cir.1991), *cert. denied*, 503 U.S. 988, 112 S.Ct. 1679, 118 L.Ed.2d 396 (1992).

Here, after the evidentiary hearings had been conducted, Judge Rufe found that he "specifically recall[ed] giving this defendant the most complete colloquy required by law." Moreover, Judge Rufe explicitly stated that Meyers was "advised of the matters required by Pennsylvania Rule of Criminal Procedure 319," including "whether there [was] a factual basis for the plea." App. 106–08. Under 28 U.S.C. § 2254(d)(8), these findings "shall be presumed correct" if they are "fairly supported by the record."

Although only Meyers testified that the factual basis was not placed on the record prior to acceptance of the plea, the district judge found that "the record unequivocally

---

1. 28 U.S.C. § 2254(d)(8) was amended in April 1996 to make it more difficult for state prisoners to challenge the factual findings of the state courts. *See* Public Law 104–132, 110 Stat. 1214 (4/24/96), § 104 (amending 2254(d)(8)) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be

presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). The Commonwealth does not argue that this amendment applies retroactively. In any event, in light of our determination that Meyers did not meet his burden under the less demanding, preamendment version of the statute, we need not reach the question.

establishes that Meyers entered his guilty plea prior to the factual basis for the plea being established." Dist. Ct. Op. at 16. The district court admitted that Judge Rufe "administered a full colloquy to Meyers on October 21, 1981," but the court decided that "the record does not independently establish that the *factual basis* for Meyers' guilty plea was established at the hearing on October 21, 1981 or that Judge Rufe included it in his colloquy." Dist. Ct. Op. at 17 (emphasis in original). The district court went on to find that "the evidence detailing the factual basis for Meyers' crime was not presented until Meyers was sentenced on November 9, 1981, some two and one half weeks *after* Judge Rufe accepted Meyers' guilty plea." Dist. Ct. Op. at 17–18 (emphasis in original). The district judge relied on the prosecutor's statement at the beginning of the November sentencing proceeding that "[w]e are here to establish the factual basis of th[e] plea." Dist. Ct. Op. at 18–19. The court concluded that although it could not "rule out the possibility that Judge Rufe himself may have advised Meyers of the factual basis for his plea as part of the colloquy on October 21, 1981, there is no transcript or independent basis to substantiate whether he in fact actually did." Dist. Ct. Op. at 19.

■ We conclude that the district court failed to adhere to the command of 28 U.S.C. § 2254(d)(8) and that Meyers failed to show that the state court's findings were in error. The question is not, as the district court asked, whether Judge Rufe "in fact actually" elicited a factual basis for the plea, but whether the record fairly supports Judge Rufe's finding that the factual basis was established before entry of the plea. The record establishes that the plea colloquy lasted 30 minutes, and Judge Rufe found that part of that colloquy included the factual basis supporting the plea. Only petitioner's testimony directly contradicts Judge Rufe's finding, and Judge Rufe explicitly refused to credit petitioner's testimony. Judge Rufe's decision not to credit petitioner's testimony cannot be disturbed, especially in view of petitioner's repeated admissions that he did not remember much about the October 1981 proceeding. Although we recognize that the prosecutor's statement at the commencement

of the sentencing proceeding lends support to the district court's conclusion, we cannot conclude that this is enough, on the whole, to say that the state court's finding is not fairly supported by the record. Moreover, nothing in the November sentencing transcript relied on by the district court states expressly that the entire factual basis was adduced at that proceeding or that certain facts were not put on the record for a second time.

Meyers does not point to any evidence clearly establishing that the state court's decision was in error. Indeed, we note that the testimony from the original prosecuting and defense attorneys further supports Judge Rufe's findings. *See* App. 49 (one of the original defense attorneys testified that she recalled colloquy questions at the October plea proceeding); App. 186–87 (petitioner's other trial attorney stated that Judge Rufe gave a full and complete colloquy at the October 1981 proceeding; the attorney further stated that prior to the entry of the guilty plea, he and Meyers discussed the factual bases supporting the plea); App. 151–54 (prosecuting attorney testified as follows: "I had a form that contained all of the required questions. As Judge Rufe went down and asked those questions, I checked each and every one of them off because they had been ... asked of Mr. Meyers.... It was explained to him as to what the elements of the crimes were and what the factual elements were that he was pleading guilty to.... At the end of the colloquy there was nothing I could think of to [suggest adding to the colloquy.]"). And the prosecutor further explained that the factual basis was merely supplemented at the November sentencing proceeding. App. 158–60.

For the above reasons, we conclude that Judge Rufe's finding is fairly supported by the record. We further determine that Meyers failed to "establish by convincing evidence that the factual determination by the State court was erroneous." For these reasons, we must reverse the district court's order granting relief under § 2254.

B. The district court held that the state court's purported failure to elicit the factual basis prior to the entry of Meyers' guilty plea

required habeas corpus relief under 28 U.S.C. § 2254. The court concluded that under Rule 319 of the Pennsylvania Rules of Criminal Procedure, and cases interpreting that Rule, a trial court must establish a factual basis for a guilty plea before accepting that plea. The court also cited Pennsylvania cases standing for the proposition that a presentation of the factual basis for the crime after acceptance of the plea is insufficient to satisfy the Rule. *See* Dist. Ct. Op. at 16–18. Based solely on this authority, and without any mention of the Due Process Clause of the Fourteenth Amendment (or any other federal constitutional provision or law), the district court found that it was required to permit Meyers to withdraw his plea. We disagree.

 Put simply, the Due Process Clause of the Fourteenth Amendment to the United States Constitution does not require an on-the-record development of the factual basis supporting a guilty plea before entry of the plea, and the failure of a state court to elicit a factual basis before accepting a guilty plea does not in itself provide a ground for habeas corpus relief under 28 U.S.C. § 2254. As the Seventh Circuit has said, Supreme Court precedent

> certainly does not imply that the factual-basis requirement of Fed.R.Crim.P. 11(f) and its state-law counterparts comes from the Constitution. Judges must guard against the assumption that whatever is familiar is also essential. Putting a factual basis for the plea on the record has become familiar as a result of statutes and rules, not as a result of constitutional compulsion. The Constitution's standard "was and remains whether the plea represents a voluntary and intelligent choice.".... A state may require its judges to engage in extended colloquies designed to elicit factual support for pleas of guilty. Putting the basis on the record not only helps the defendant make a wise choice but also prevents subsequent litigation in which the defendant denies knowing some vital bit of information. Shortcomings in compliance with such requirements do not entitle prisoners to collateral relief in federal court. On collateral attack, a silent record supports the judgment; the state receives the benefit of a presumption of regularity and all reasonable inferences.

*Higgason v. Clark,* 984 F.2d 203, 207–08 (7th Cir.) (citations omitted), *cert. denied,* 508 U.S. 977, 113 S.Ct. 2974, 125 L.Ed.2d 672 (1993). *Accord Riggins v. McMackin,* 935 F.2d 790, 794–95 (6th Cir.1991) ("We note at the outset our concern over the district court's apparent reliance on the trial court's failure to strictly adhere to Ohio R.Crim.P. 11.... The district court's decision granting Riggins' writ of habeas corpus appeared to rely upon the fact that the trial court did not strictly adhere to the requirements of Ohio R.Crim.P. 11. In this respect, the district court was in error. The district court's sole inquiry should have been, as is ours, whether Riggins' guilty plea comported with the protections of due process."); *Rodriguez v. Ricketts,* 777 F.2d 527, 527–28 (9th Cir.1985) ("Rodriguez contends his guilty plea was invalid because it was not supported by a factual basis on the record. Such a record is required under Arizona law. However, relief under section 2254(a) can be granted only for a violation of the United States Constitution, a federal statute, or a treaty. In federal court, the requirement that there be a factual basis for a guilty plea arises from Federal Rule of Criminal Procedure 11(f). The question is whether the due process clause contains a similar requirement binding on the states. We conclude that the due process clause does not impose on a state court the duty to establish a factual basis for a guilty plea absent special circumstances. We do not address a case where special circumstances exist, for example, a defendant's specific protestation of innocence, which might impose on a state court the constitutional duty to make inquiry and to determine if there is a factual basis for the plea. There are no such special circumstances in this case.") (citations omitted); *Willbright v. Smith,* 745 F.2d 779, 780 (2d Cir.1984) ("The voluntariness of a plea of guilty ... should be determined by considering all of the relevant circumstances. A factual basis inquiry, such as that demanded by appellant, is merely one way of satisfying the constitutional requirement that a plea be voluntary and intelligent. Moreover, due process does not

mandate a factual basis inquiry by state courts. Further, it is Fed.R.Crim.P. 11, not due process, that requires federal courts to conduct a factual inquiry before accepting a guilty plea.") (citations omitted); *see also United States ex rel. Crosby v. Brierley,* 404 F.2d 790 (3d Cir.1968) ("The trial court did not follow the salutary procedures suggested by tradition, established by good reason, and now mandated by the Pennsylvania Rules of Criminal Procedure. But this dereliction does not, of itself, debase the trial proceedings; the failure of the state court to have the inquiry made does not, of itself, entitle the relator to federal habeas corpus relief. There must be a factual showing that the guilty plea was not intelligently and knowingly entered; that there was an actual deprivation of his constitutionally-protected guarantee of due process.... If Crosby did understand the nature and consequences of his plea of guilty, he is entitled to no relief, irrespective of the trial court's failure to conduct an inquiry into the factual basis of the defendant's knowledge and understanding of the technical plea entered.") (citations omitted); *United States ex rel. Johnson v. Russell,* 309 F.Supp. 125 (E.D.Pa.1970) (Higginbotham, J.) (same), *aff'd,* 444 F.2d 1177 (3d Cir.1971), *cert. denied,* 405 U.S. 977, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972); *United States v. McGlocklin,* 8 F.3d 1037, 1047–48 (6th Cir.1993) (en banc) ("While it is advisable to conduct an on-the-record inquiry into the factual basis for a plea, the failure of a state trial judge to do so will not serve as a basis for habeas relief.... This circuit has long recognized that, absent special circumstances, 'there is no constitutional requirement that a trial judge inquire into the factual basis of a plea.'") (citation omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 1614, 128 L.Ed.2d 341 (1994); *Stano v. Dugger,* 921 F.2d 1125, 1141 (11th Cir.) (en banc) (Federal Rule of Criminal Procedure 11 is not bind-

ing on state courts, and a "reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process."), *cert. denied,* 502 U.S. 835, 112 S.Ct. 116, 116 L.Ed.2d 85 (1991); *United States v. Grewal,* 825 F.2d 220, 222 (9th Cir.1987) ("For a section 2255 movant to successfully challenge a guilty plea based upon a violation of Rule 11, he must establish that the violation amounted to a jurisdictional or constitutional error or that the violation resulted in a complete miscarriage of justice or in a proceeding inconsistent with the demands of fair procedure. He must also establish that he was prejudiced in that he was unaware of the consequences of his plea, and, if properly advised, would not have pleaded guilty.") (citations omitted); *Frank v. Blackburn,* 646 F.2d 873, 882 (5th Cir.1980) (same), *modified on other grounds,* 646 F.2d 902 (5th Cir.), *cert. denied,* 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 123 (1981); *see generally Miles v. Dorsey,* 61 F.3d 1459, 1465–67 (10th Cir. 1995).

■ Neither the district court nor petitioner has cited any authority to the contrary. Moreover, our own research has not disclosed any authority that supports the district court's categorical holding that a state court guilty plea without the prior development of a factual basis supporting the plea renders the plea invalid as a matter of federal law in the habeas corpus context, and, in any event, we reject that proposition.[2]

Thus, even assuming that Meyers overcame the presumption of correctness and that there was no development of a factual basis prior to the entry of his guilty plea, this would not—in and of itself—give rise to relief under § 2254. Rather, petitioner must show (as to ground one) that the plea was either involuntary or unintelligent. *See, e.g., Higgason,* 984 F.2d at 208. For this indepen-

---

**2.** We further note that there is uncontradicted testimony from petitioner's trial counsel that the two public defenders met with Meyers on numerous occasions prior to the plea and that they went through the factual basis for the plea in great detail. This was not addressed by the district court. We hold, alternatively, that this was sufficient and that as long as the defendant had been made aware of the factual basis for the plea prior to its entry, he cannot complain that

his plea was involuntary or unintelligent. *See, e.g., Stano v. Dugger,* 921 F.2d at 1142 ("The defendant does not necessarily need to be told the nature of the offense and elements of the crime at the actual plea proceedings; a knowing and intelligent guilty plea may be entered on the basis of the receipt of this information, generally from defense counsel, before the plea proceedings.") (citations omitted); *see also United States v. McGlocklin,* 8 F.3d at 1047–48 (same).

dent reason, the district court's order must be reversed.

C. The district court addressed only one aspect of one of petitioner's three claims; that is, the district court discussed only the factual-basis aspect of Meyers' claim that his plea was involuntary and unintelligent. The district court explicitly decided not to address grounds two and three. In addition, as to ground one, the district court did not discuss whether petitioner's plea was voluntary and intelligent under the Due Process Clause of the Fourteenth Amendment. Moreover, these issues have not been argued by the parties, whose briefs address only the factual-basis issue. In these circumstances, we believe that all of these claims should be addressed, in the first instance, by the district court. *See generally Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp.,* 884 F.2d 80, 86 (3d Cir.1989) ("We generally decline to address issues that have not been passed upon below absent exceptional circumstances (which are not present here). We are doubly concerned about addressing this issue in this case because ... neither party has fully addressed it ....") (citation omitted); *see also, e.g., Berda v. CBS Inc.,* 881 F.2d 20, 28 (3d Cir.1989), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990); *Selected Risks Ins. Co. v. Bruno,* 718 F.2d 67, 69 (3d Cir.1983).

However, we do wish to provide some guidance for the district court's further consideration of Meyers' claim that he is entitled to habeas relief based on certain statements by his attorneys concerning his potential for parole eligibility made before and during the sentencing proceeding. Ground one of Meyers' petition alleges that his "conviction was the result of an unknowing and involuntarily entered guilty plea" for five reasons. Specifically, Meyers alleges that he "did not know and was not aware of" the following: (1) "the charge he was pleading to;" (2) "the consequences of the plea;" (3) "his right to participate in the selection of the jury;" (4) "the facts pertaining to the plea;" and (5) "the fact that the underlying felony for the charge had

been dismissed." [3] Meyers' third claim for relief alleges that he received ineffective assistance of counsel based in part on the claim that his "counsel misinformed [him] as to the consequences of the plea."

Thus, in grounds one and three, Meyers claims that he was misled by his attorneys and the state court as to the consequences of his plea and in particular his parole eligibility. Specifically, Meyers appears to claim that although he knew that he would receive a life sentence, he was told by his attorneys that he would be eligible for parole within roughly seven to ten years. Meyers contends that certain references to parole by his attorney during the November 1981 sentencing proceeding support his claim that he was misled as to the consequences of his plea and that the trial judge and the prosecutor failed to correct his misunderstanding.

It is well settled that the Constitution does not require that a defendant be provided with information concerning parole eligibility. *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985); *see also King v. Dutton,* 17 F.3d 151, 154 (6th Cir.) ("a defendant need not be informed of the details of his parole eligibility, including the possibility of being ineligible for parole") (citations omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 2712, 129 L.Ed.2d 838 (1994). Thus, if Meyers were merely alleging that his constitutional rights were violated because he did not receive information concerning his eligibility for parole, his claim would be entirely without merit.

However, several federal appellate courts have suggested or held that, where parole eligibility information is provided to a defendant by the state or the defendant's attorney and that information is grossly erroneous, a defendant may be entitled to habeas relief where he can show that he would not have pleaded guilty had accurate information been provided. *See, e.g., Sparks v. Sowders,* 852 F.2d 882, 885 (6th Cir.1988) ("This court has yet to decide whether erroneous advice concerning parole eligibility can amount to ineffective assistance of counsel. However, this

---

**3.** Of the five grounds alleged in support of Meyers' first claim, the district court ruled on only one, i.e., number four above.

issue has been addressed by other circuits which have held or noted that misinformation concerning parole eligibility can be ineffective assistance of counsel.... We now hold that gross misadvice concerning parole eligibility can amount to ineffective assistance of counsel."); *Czere v. Butler*, 833 F.2d 59, 63 n. 6 (5th Cir.1987) ("other courts have recognized a distinction between failure to inform and giving misinformation" regarding parole eligibility) (citations omitted); *O'Tuel v. Osborne*, 706 F.2d 498, 500–01 (4th Cir. 1983); *Cepulonis v. Ponte*, 699 F.2d 573, 577 (1st Cir.1983) (defendant need not be informed of the details of parole eligibility but "*mis*information may be more vulnerable to constitutional challenge than mere lack of information") (citation omitted) (emphasis in original); *Strader v. Garrison*, 611 F.2d 61, 65 (4th Cir.1979) ("[T]hough parole eligibility dates are collateral consequences of the entry of a guilty plea of which a defendant need not be informed if he does not inquire, when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel."); *see also Hill v. Lockhart*, 474 U.S. at 60, 106 S.Ct. at 371 ("We find it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel, because in the present case we conclude that petitioner's allegations are insufficient to satisfy the *Strickland v. Washington* requirement of 'prejudice.'").

As mentioned, the district court did not rule on Meyers' parole eligibility arguments, and neither will we. The district court did seem troubled, however, that "[n]either Judge Rufe nor Assistant District Attorney McHugh interrupted the sentencing proceedings on November 9, 1981 at any time when Kastendieck used the word 'parole' or referred to Meyers getting back on the street again to state that Meyers was not eligible for parole or to get back on the street again." Dist. Ct. Op. at 9.[4]

It is true, as the district court noted, that the offense of second-degree murder carried a mandatory penalty of life imprisonment without parole. *See* 18 Pa. Con. Stat. Ann. § 1102(b); *Castle v. Pa. Bd. of Probation & Parole*, 123 Pa.Cmwlth. 570, 554 A.2d 625, *appeal denied*, 523 Pa. 650, 567 A.2d 653 (1989). However, the Governor, upon the recommendation of the Board of Pardons, possessed the power to commute such a sentence to a lesser sentence. *See* Pa. Const. art. 4, § 9(a); *Commonwealth v. Sutley*, 474 Pa. 256, 378 A.2d 780, 789 n. 12 (1977) ("the power of commutation is an adjunct of the pardoning power"). And once such a commutation was granted, the defendant could be paroled. *See, e.g., Moroz v. Pennsylvania Bd. of Probation & Parole*, 660 A.2d 131, 132 (Pa.Cmwlth.Ct.1995) (first-degree murderer sentenced to life imprisonment without parole; governor commuted sentence to a minimum of 15–year prison term; and defendant was paroled). Judge Cirillo's dissenting opinion in *Commonwealth v. Gillespie*, 333 Pa.Super. 576, 482 A.2d 1023, 1032–33 n. 2

---

4. We note again our concern that the district court made no mention of the statutory "presumption of correctness," to which Judge Rufe's state court factual findings are entitled so long as they are fairly supported by the record. Just as the district court was bound to consider whether Judge Rufe's finding regarding the factual basis issue was fairly supported by the record, it was also bound to make this determination regarding Judge Rufe's findings on the parole issue.

In this regard, we note that Judge Rufe found that Meyers had been advised of all the matters required by Pennsylvania Rule of Criminal Procedure 319(c), including "whether [the] defendant is aware of the range of sentences or fines which he faces." App. 107–08 & n. 2. Judge Rufe specifically found:

[T]he advice counsel gave defendant regarding the possible real time he would be incarcerated

was accurate at the time it was given. We find credible Attorney Niefield's testimony that counsel's advice was based on a calculation of the real time that persons convicted of first and second degree murder were actually serving at the time. This advice was specifically based on the then-common policies of sentence commutation and early paroles. Furthermore, defendant in his brief quotes Attorney Richard Kastendieck (Ms. Niefield's co-counsel) as expressly recognizing in his argument at the sentencing hearing that defendant "is facing a life sentence."

App. 111 (citation omitted). Hence, on remand, these findings should be considered and evaluated by the district court in its determination of whether the writ should issue.

(1984), *reversed on other grounds*, 512 Pa. 349, 516 A.2d 1180 (1986), provides a summary of this practice:

> Before a life prisoner may be paroled the Governor must commute his minimum sentence to a term of years. This the Governor may do only on the recommendation of the Board of Pardons. Pa. Const. art. 4, § 9; The Administrative Code of 1929, § 909, as amended by Act of July 31, 1968, P.L. 769, No. 240, art. VI, § 609(8), 71 P.S. § 299. Next, after expiration of the term of years as commuted, the Board of Parole must exercise its discretion whether to parole the prisoner, subject, however, to the authority of the Board of Pardons to order parole if the Board of Parole does not. Act of Aug. 6, 1941, P.L. 861, § 21, as amended, 61 P.S. § 331.21. Of course, in deciding whether to grant parole the Parole Board must consider any recommendations made by the judge who heard the case and who may even have imposed the original sentence. But the final decision on how much time a life prisoner will serve remains purely an administrative matter. Although my statistics are not completely up to date, they indicate that parole is a looming possibility for a life prisoner. For the years 1967–1980, the Board of Pardons heard 1251 applications by life prisoners for commutation of sentence, and in 379 (30%) of these cases recommended to the Governor that sentence be commuted. Analyses of the Action of the Board of Pardons Sessions for the Calendar Years 1967–1980. And according to tables prepared for the Parole Board, over the years 1962–1971 inclusive 180 life prisoners were released after having served an average of 19 years, 7 months in prison; for the years 1971–1980 inclusive 219 were released after an average of 17.7 years served. (Figures for the year 1971 are different in the two tables I have access to, "Lifers Released on Parole During the Past Ten Years [1962–1971]," and "Time Served by Commuted Lifers 1971 to 1980").

Judge Rufe apparently referred to this practice in this case when he mentioned "the then-common policies of sentence commutation and early paroles." App. 111. Again, at this stage we express no opinion with regard to the underlying merits of Meyers' claim; we merely note that the references to parole during the sentencing proceeding and the advice given to Meyers by his attorneys should be evaluated against the background set out above.

D. On remand, the district court must determine, among other things, whether petitioner's plea was voluntary and intelligent in light of all the relevant circumstances and whether there is merit to Meyers' claim that he was denied the effective assistance of counsel. In so doing, the district court must heed the presumption of correctness to which state court factual findings are generally entitled and apply the correct federal constitutional tests rather than tests taken from state law.

### III.

For the above reasons, we reverse the district court's order granting Meyers habeas relief. We remand this matter to the district court for further proceedings consistent with this opinion.

McKEE, Circuit Judge, concurring:

I agree with the result reached by the majority, and therefore join in the judgment, but I must disagree with my colleagues' conclusion that the district court erred in overturning the state trial judge's finding that a factual basis was established before the entry of petitioner's guilty plea. Although the state court's factual determination is presumed to be correct, that presumption is clearly rebutted here.[1] The state court's conclusion that the factual basis for petitioner's plea had been established during the guilty plea colloquy is refuted by the transcript of the sentencing hearing as well as other circumstances in this record. However, for the reasons set forth in part II B of the majority's opinion, I agree that the failure to fully establish the factual basis for a

---

1. 28 U.S.C. § 2254(d) provides, in relevant part, that a state court's factual determinations "shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, ... that such factual determination is not fairly supported by the record ..."

guilty plea in violation of Pennsylvania Rule of Criminal Procedure 319(a) is not *by itself* a basis for habeas corpus relief under 28 U.S.C. § 2254.[2]

On October 21, 1981, Philip Meyers pleaded guilty to second degree murder in the Court of Common Pleas in Bucks County Pennsylvania. Subsequently, on November 9, 1981, the trial judge sentenced petitioner to life imprisonment without parole. Nearly ten years later, the judge determined that the colloquy he administered when he accepted petitioner's guilty plea included the complete factual basis for the plea.

Yet, *three weeks after entry of the guilty plea,* at the sentencing hearing that was held in November, Assistant District Attorney Raymond McHugh, began his presentation to the court as follows:

> Your Honor, we are here on Criminal Information 2854 of 1981 in which defendant Philip Meyers has already entered a plea of second degree murder. *We are here to establish the factual basis of* that plea. (emphasis supplied).

App. at 5. McHugh then proceeded to offer the testimony of Bucks County Detective John Mullin. Mullin testified that he investigated the death of Hugh Daily; interrogated and arrested Meyers; and took a broad, inculpatory statement from the petitioner. *Id.* at 6–7. He testified as to the findings of the Commonwealth's autopsy report and an additional statement Meyers gave to Detective Gilbert Bush conceding an intent to rob the victim. *Id.* at 8–9. Finally, McHugh inquired whether Mullin's investigation indicated that Meyers committed the murder of Daily on July 13, 1981. Mullin said it did. *Id.* at 9–10.

Thus, I conclude that the district court was correct in finding that the factual basis for petitioner's plea was not established during the guilty plea colloquy, despite both the trial judge's finding to the contrary, and the presumption to which that finding is entitled. To conclude otherwise, as the majority does today, means that the trial judge sat silently as the prosecutor misstated the status of the record, and then allowed the prosecutor to call witnesses whose testimony would have been redundant, unnecessary and a waste of precious time. It means that the trial judge did not interrupt as the prosecutor introduced evidence to establish facts which the prosecutor now argues had already been established during the guilty plea colloquy. Especially in light of the *Ingram* line of cases set forth above at n. 2, I cannot imagine that the trial judge would not only fail to interrupt McHugh's bald statement of purpose at the beginning of the sentencing hearing (i.e., "we are here to establish the factual basis ...") but permit the full-blown presentation of a factual basis more than three weeks after acceptance of the guilty plea if it were not necessary to allow that testimony to proceed.

My colleagues unquestioningly accept the Commonwealth's gratuitous suggestion that the prosecutor was "merely supplementing" the factual basis at sentencing. Maj. Op. at 1150–51. I cannot agree. The prosecutor's announced intent to "merely supplement" the factual basis, is clearly belied by the unqualified statement of purpose (i.e., "we are here to *establish* the factual basis ...") and the comprehensive nature of the testimony he then presented. The testimony at the November 9, 1981 sentencing, would—by itself—likely suffice as a factual basis for peti-

**2.** Rule 319(a) of the Pennsylvania Rules of Criminal Procedure provides, in relevant part, that "[t]he judge may refuse to accept a plea of guilty, and shall not accept it unless he determines after inquiry of the defendant that the plea is voluntary and understandingly tendered. Such inquiry shall appear on the record ..." The commentary to the Rule provides that a guilty plea colloquy should inquire into the factual basis for the plea. The Pennsylvania courts have mandated that trial judges establish the factual basis for a guilty plea before it is accepted. See *Commonwealth v. Ingram,* 455 Pa. 198, 316 A.2d 77 (1974) (Trial judge must establish a factual basis for the plea before its acceptance); *Commonwealth v. Anthony,* 504 Pa. 551, 557, 475 A.2d 1303 (1984) ("[T]he court must determine whether there is a factual basis for the plea ... to prevent a plea where in fact the legal requirements have not been met."); *Commonwealth v. Manning,* 263 Pa.Super. 430, 398 A.2d 212 (1979) (Presentation of the factual basis after acceptance of the guilty plea is insufficient to satisfy the requirements of Rule 319). *Commonwealth v. Johnson,* 242 Pa.Super. 188, 363 A.2d 1223 (1976) (by implication); *Commonwealth v. Kearse,* 233 Pa. Super. 489, 334 A.2d 720 (1975).

tioner's guilty plea. I conclude that is why it was offered. Indeed, even if the prosecutor did merely supplement the factual basis as the majority surmises, petitioner should still have been asked whether he was admitting the assertions contained in the new testimony. Clearly, in Pennsylvania, a prosecutor cannot obtain a valid guilty plea by having a defendant admit to some facts during a guilty plea colloquy and then "supplement" the colloquy with additional facts at the sentencing in the belief that the defendant's prior plea will also carry over to things he may not have admitted to that were elicited for the first time at a sentencing hearing. Moreover, even if the prosecutor felt it necessary to "merely supplement" the record at the sentencing, that very determination—unchallenged by the trial judge—further undermines the trial judge's finding that Meyers received "the most complete colloquy required by law." Maj. Op. at 1149–50. Either the prosecutor did not agree that the prior colloquy was all that complete or he was willing to waste the court's time, his own time, his witness' time, and the defense attorneys' time by putting on evidence that he knew was unnecessary.

Further, I think the district court was correct in not placing great significance in the fact that the trial judge invested 30 minutes in petitioner's guilty plea colloquy.[3] A 30 minute colloquy for a criminal offense, especially one requiring life imprisonment without parole, does not support the conclusion that this petitioner received "the most complete colloquy ..." Maj. Op. at 1149–50. Likewise, the prosecutor's form that was checked off as the petitioner was asked "all of the required questions", *see id.* at 1150, certainly does not establish that the mandated, defense-specific evidence was presented at the time of the plea. It merely corrobo-

rates that the required questions were asked, not that the required information was provided petitioner. If asking "all of the required questions" has the effect now urged upon us by the Commonwealth, I am even more at a loss to know why so much valuable time was consumed with establishing a factual basis at the sentencing hearing. Thus, the prosecutor's assertion at this late date that "there was nothing [he] could think of to [suggest adding to the colloquy]" is less than persuasive. Maj. Op. at 1150–51.

Ultimately, only the recollections of the trial judge himself and attorneys McHugh and Kastendieck—*each furnished more than seven years after the October 21, 1981 plea proceeding*—support the finding that a complete factual basis was articulated before the plea was accepted. Defense counsel Neifield testified that she did not recall the colloquy questions of October 21, 1981. App. at 49. Given the well-documented events of record, I must agree with the district court that the trial judge's determination is simply not fairly supported by this record, and that the presumption of correctness that attaches under 28 U.S.C. § 2254(d) is rebutted.[4] As noted above, although I believe the district court's decision to overturn the state court's finding was correct, I do not think this entitles the petitioner to habeas relief. Accordingly, I believe that this matter must be remanded so that the district court can determine whether the plea was voluntary and intelligent. Thus, I concur in this judgment.

**3.** Judge Rufe's bench notes from October 21, 1981, indicated that he began the colloquy at 2:03 p.m. and accepted the plea at 2:33 p.m. Of course, there is no notation to allow one to conclude that none of that time was consumed by the attorney and his client conferring about questions that the client may have wanted to ask his attorney at counsel table, "off the record," or by the attorney taking time to resolve any last minute doubts that frequently arise before one pleads guilty to the charge of murder. Indeed,

experience teaches that much, if not most, of the 30 minutes could have been spent in just such off-the-record conferences.

**4.** Of course, I certainly do not doubt the integrity or veracity of the distinguished trial judge when he states that he recalls giving the most complete colloquy to petitioner. However, the judge's belief appears based not upon his specific recollection of this defendant, but upon the notes he took as to the duration of the colloquy.