Gene C. **STRADER**, Appellee,

v.

Sam **GARRISON**, Warden, Appellant.

No. 78–6235.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 12, 1979.

Decided Dec. 20, 1979.

Richard N. League, Asst. Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of N. C., Raleigh, N. C., on brief), for appellant.

T. Paul Hendrick, Winston Salem, N. C. (P. B. Whiting, Winston Salem, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, MILLER, Judge,*, and PHILLIPS, Circuit Judge.

HAYNSWORTH, Chief Judge:

The district court granted habeas corpus relief to this state prisoner who attacked his conviction, entered upon a plea of guilty, upon the ground of gross misadvice by his

---

\* Honorable Jack R. Miller, United States Court of Customs and Patent Appeals, sitting by designation.

lawyer respecting the effect of the new sentence upon his parole eligibility date. North Carolina has appealed upon the ground that the parole eligibility date is but a collateral consequence of the plea of which Strader need not have been informed. It urges us to apply the rule in a case in which there was positive misinformation. We decline to do so.

In 1968 a forty-five to fifty-five year indeterminate sentence was imposed upon Strader on robbery and burglary convictions. He escaped from prison in April 1974 and, after his recapture, was put to trial in 1975 upon charges of armed robbery and conspiracy said to have been committed by him while on escape. After presentation of the state's case in the 1975 trial, the lawyers agreed upon a plea bargain. The tentative agreement was that Strader would plead guilty to both offenses, and would be sentenced to thirty years on the armed robbery conviction, to be served concurrently with the 1968 sentence, and to five to ten years on the conspiracy charge, to be served consecutively to the 1968 sentence.

In 1975 Strader was thirty-six years old.

Strader and the lawyer realized, of course, that imposition of the consecutive five to ten year sentence would postpone Strader's parole eligibility date by one-fourth of the five-year minimum. They knew, too, that imposition of the thirty-year sentence on the armed robbery conviction itself would not prolong the time during which Strader would languish in jail if he were not paroled, but Strader expressed concern that the thirty-year sentence might further postpone his parole eligibility date. He was assured by the lawyer that it would not. The advice was wrong, for under the published regulations of the North Carolina Department of Correction imposition of the thirty-year concurrent sentence clearly required a recomputation of the period to be served to establish parole eligibility, so that it would be fixed at one-fourth of the combined 1975 sentences.

The district court found that his parole eligibility date was of great importance to Strader and that he would not have entered his guilty plea if he had been correctly advised about the effect of the new sentences upon that eligibility date. He had only a few more years to serve before parole eligibility date on the 1968 sentence would have been reached, and his primary concern in 1975 was with the impact of the new sentences upon parole eligibility. The findings of fact are very substantially supported on the record, and are not challenged by North Carolina.

Clearly, Strader did not receive the effective assistance of counsel, which the Constitution guarantees.[1] This was not just a prediction which was not realized. The lawyer could have discovered the applicable rule had he looked in the published material, but he did not. The result was that Strader entered his guilty plea believing that his new eligibility date would be several years sooner than the regulations permitted.

The imposition of a sentence or sentences may have a number of collateral consequences, and a plea of guilty is not rendered involuntary in a constitutional sense if the defendant is not informed of all of the possible indirect and collateral consequences.[2] Ordinarily, parole eligibility is such an indirect and collateral consequence, of which a defendant need not be specifically advised by the court or counsel before entering a plea of guilty.

One would not suppose that the collateral consequence rule, which exempts some consequences from the positive disclosure requirement, would apply in a situation in which the defendant's guilty plea was induced by actual misadvice respecting some collateral consequence when that consequence was of substantial importance to the defendant. There are, however, two cases which hold that it does.

---

1. *McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Marzullo v. Maryland*, 561 F.2d 540, 542–43 (4th Cir. 1977).

2. *Bell v. North Carolina*, 576 F.2d 564 (4th Cir. 1978); *Bell v. United States*, 521 F.2d 713 (4th Cir. 1975); *Cuthrell v. Director*, 475 F.2d 1364 (4th Cir. 1973).

In *United States v. Parrino*, 212 F.2d 919 (2d Cir. 1954), the defendant, an alien, was assured by his lawyer that the entry of a guilty plea would not make him deportable. The defendant sought to withdraw his plea when he found that it had made him deportable. Over the dissent of Judge Frank, a panel of the Second Circuit Court of Appeals denied relief.

Again the same situation was presented in *United States v. Sambro*, 147 U.S.App. D.C. 75, 454 F.2d 918 (D.C. Cir. 1971). Sambro, an alien charged with a heroin offense, was advised by his lawyer that if he entered a plea of guilty and was put on probation he would not be made deportable. The lawyer informed the court that he had so advised his client and sought and obtained a probationary sentence. When the defendant found that the plea and the sentence had made him deportable, he sought to withdraw his plea. A panel of the District of Columbia Circuit Court of Appeals denied relief and rehearing *en banc* was denied over the dissent of four judges. In that case, Sambro discovered his deportability before imposition of the sentence and moved for leave to withdraw the plea before it was imposed. Even though the debate within the court was couched in terms of the discretion of the trial judge to refuse permission to withdraw a plea before imposition of the sentence, denial of the motion was affirmed, but only over the protest of four dissenters from the denial of *en banc* rehearing. Insofar as the claim was seen to have a constitutional underpinning, deportation was said to be only a collateral consequence of the sentence and beyond the reach of the constitutional protection.

■ We regard those cases as aberrations. In neither case was the problem approached in terms of the constitutional entitlement to the effective assistance of counsel. Surely when ineffective assistance of counsel and prejudice are both established relief is routinely granted. If the effective assistance of counsel might have produced an acquittal, a conviction at the conclusion of a trial upon a plea of not guilty will be vacated if the defense lawyer's performance was below the range of competence expected of lawyers in the conduct of criminal trials. There is no reason the same rule should not be applied when a guilty plea is induced by a lawyer's ignorance and misadvice to a client.

Notwithstanding *Parrino*, and without reference to it, the Court of Appeals for the Second Circuit came to that conclusion in just such a case as this. *United States ex rel. Hill v. Ternullo*, 510 F.2d 844 (2d Cir. 1975). There, it appeared that the lawyer advised the defendant that if a five to ten year indeterminate sentence were imposed upon him he would be eligible for parole within approximately two years. In fact, under the law of New York, he was ineligible for parole until he had served the full five-year minimum. In that case there had been no fact finding, however, so the case was remanded with instructions to hold a hearing and to grant a writ of habeas corpus if the facts as found were substantially as supposed.

■ The court in *Ternullo* did not specifically discuss the collateral consequence rule or concern itself with whether a guilty plea induced by such gross misadvice of his lawyer is involuntary or unintelligent. *See Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The Supreme Court in the *Brady* trilogy seems to have characterized such a plea as involuntary, 397 U.S. at 770–71, 90 S.Ct. 1463, though it seems to us enough to say, as the Court of Appeals for the Second Circuit in *Ternullo* did say, that the assistance of counsel was so ineffective as to amount to a denial of the constitutional right to counsel. The judgment of conviction must be vacated when it appears, as here, that the guilty plea would never have been tendered if the defendant had been properly advised by his lawyer.

■ In *Hammond v. United States*, 528 F.2d 15 (4th Cir. 1975), it was held that the guilty plea tendered upon advice that the defendant faced maximum sentences aggre-

gating ninety-five years when the aggregate maximum was only fifty-five years was constitutionally involuntary. The misadvice there concerned a direct consequence of the plea, and the plea of a criminal defendant thus misinformed may be said to be both involuntary and unintelligent. The simple fact is that the defendant was misled by erroneous advice. So was the defendant here. When the misadvice of the lawyer is so gross as to amount to a denial of the constitutional right to the effective assistance of counsel, leading the defendant to enter an improvident plea, striking the sentence and permitting a withdrawal of the plea seems only a necessary consequence of the deprivation of the right to counsel. Deprivation of the constitutional right cannot be left unredressed. When it has occasioned the entry of a guilty plea, the inevitable redress is an order striking the plea or the release of the prisoner.

Here, though parole eligibility dates are collateral consequences of the entry of a guilty plea of which a defendant need not be informed if he does not inquire, when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel. When the erroneous advice induces the plea, permitting him to start over again is the imperative remedy for the constitutional deprivation. Induced by such erroneous advice, the plea in this case was no less involuntary or unintelligent than was Hammond's.

The district court directed that the writ issue subject to North Carolina's right to retry Strader. Should North Carolina wish, and its laws permit, it might avoid the problem by reducing the 1975 thirty-year sentence to such an extent that it would have no adverse impact upon Strader's eligibility date. If it does that, the lawyer's blunder would have been reduced to harmless error. On remand we think that North Carolina should be given that alternative. Otherwise, the writ should issue subject to retrial within a reasonable time.

*VACATED AND REMANDED.*