**William G. O'TUEL, Appellant,**

v.

**J.E. OSBORNE, Attorney General of North Carolina, Rufus Edmisten, Appellees.**

No. 82–6668.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 10, 1983.

Decided May 18, 1983.

Gwendolyn S. Anderson, J. Christian Annalora, Third Year Law Students (Thomas D. Rowe, Jr., Durham, N.C., Duke University School of Law on brief), for appellant.

Barry S. McNeill, Asst. Atty. Gen., Raleigh, N.C. (Rufus L. Edmisten, Atty. Gen. of North Carolina, Richard N. League, Sp. Deputy Atty. Gen., Raleigh, N.C., on brief), for appellees.

Before SPROUSE and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

SPROUSE, Circuit Judge:

William G. O'Tuel, a North Carolina inmate, appeals the dismissal of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.[1] A state trial judge had sentenced him to life imprisonment upon his plea of guilty to second degree murder. O'Tuel contends that his guilty plea was entered involuntarily and unintelligently because it was induced by gross misinformation of his counsel concerning his parole eligibility date. We agree, and reverse the judgment of the district court.

O'Tuel was indicted on January 6, 1975, on a charge of first degree murder. He retained private counsel, Henry Kitchin and Benny Sharpe, to represent him. Kitchin correctly informed O'Tuel that a conviction on the charged offense was punishable with death,[2] and strongly suggested plea bargaining. Kitchin further advised him that the most the state would concede in negotiations was a plea of guilty to second degree murder with life imprisonment. O'Tuel responded by asking Kitchin what the parole eligibility date would be if he decided to plead guilty to the lesser offense. Kitchin then incorrectly advised him that North Carolina law considered a sentence of life imprisonment as commuted to 40 years, and that he would be eligible for parole after serving 10 years. Although this previously had been the law,[3] unbeknownst to Kitchin the applicable statute had been amended. As of April 8, 1974, North Carolina law commuted a sentence of life imprisonment to 80 years, and O'Tuel would be eligible for parole only after serving 20 years of his sentence.[4] O'Tuel thereafter agreed to

---

1. In the district court, O'Tuel's petition was referred to a magistrate who considered the respondents' motion to dismiss on certified copies of state court records and affidavits submitted by O'Tuel in reply. The district court adopted the magistrate's findings and recommendation to dismiss the petition.

2. The then applicable North Carolina statute, which later was repealed, provided:

   A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, kidnapping, burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death. N.C.Gen.Stat. § 14–17 (Cum.Supp.1974).

3. N.C.Gen.Stat. § 148–58 (Repl.1974).

4. The then applicable statute, which since has been amended again, provided in relevant part:

   All prisoners shall be eligible to have their cases considered for parole when they have served a fourth of their sentence, if their sentence is determinate, and a fourth of their minimum sentence, if their sentence is indeterminate; provided, that any prisoner serving sentence for life shall be eligible for such

plead guilty to second degree murder, and the state in turn agreed to forego prosecution for first degree murder and recommend a sentence of life imprisonment. Sometime after he pled guilty and was sentenced, O'Tuel learned of Kitchin's error and the misinformation which Kitchin had given him in connection with his decision to plead guilty.

O'Tuel filed a petition for post-conviction relief on October 30, 1978, in state court contesting the validity of his guilty plea. A hearing was held on August 27, 1979, at which he was represented by appointed counsel. The court denied the petition based on its finding that "the primary consideration for the plea of guilty to second degree murder was to avoid the very likely consequence of the death penalty from being convicted by a jury of first degree murder, and that the [consideration of] eligibility of parole was of a secondary nature." The North Carolina Supreme Court thereafter denied O'Tuel's petition for a writ of certiorari.

In a benchmark decision by Judge Haynsworth, this court in 1979 stated:

> [T]hough parole eligibility dates are collateral consequences of the entry of a guilty plea of which a defendant need not be informed if he does not inquire, when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel.

*Strader v. Garrison,* 611 F.2d 61, 65 (4th Cir.1979). While there are differences between the procedural facts surrounding O'Tuel's plea and those surrounding the plea in *Strader,* the facts affecting the voluntariness of the two pleas are so similar that the disposition of this appeal is necessarily controlled by our decision in *Strader.*

The record clearly indicates that two considerations bore heavily on O'Tuel's decision to plead guilty: the possibility of receiving the death sentence if he were tried and found guilty of first degree murder, and his parole eligibility date if he pled guilty to second degree murder. Although O'Tuel never directly expressed concern about the possibility of the death sentence, both of his counsel emphasized that possibility as they urged him to engage in plea bargaining. In the state court post-conviction proceeding, Kitchin, who had been O'Tuel's principal defense counsel, stated in his affidavit:

> It was my advice to Mr. O'Tuel, and that of Mr. Sharpe to Mr. O'Tuel, that regardless of what the parole provisions were, it would be in his best interest to plead guilty to second degree murder rather than run the risk of a conviction of first degree murder.

Kitchin also enlisted the aid of O'Tuel's mother and two sisters to persuade him to consider plea bargaining. It is significant that O'Tuel's principal response to these overtures from Kitchin and his family was to inquire as to his parole eligibility date in the event he pled guilty to the lesser offense. Even after Kitchin advised him (incorrectly) of the law governing parole eligibility, O'Tuel insisted that counsel verify this information with a prison official.[5]

As in *Strader,* it is clear that O'Tuel did not receive effective assistance of counsel.[6] The state court, however, denied post-conviction relief. It found, relying mainly on Kitchin's verified statement quoted above and the fact that the transcript of the negotiated plea contained no reference to "eligibility of parole," that O'Tuel's primary concern in entering his plea was the possibility of receiving the death penalty.

The above quoted portion of Kitchin's affidavit at most establishes only that

consideration when he has served 20 years of his sentence. Nothing in this section shall be construed as making mandatory the release of any prisoner on parole, but shall be construed as only guaranteeing to every prisoner a review and consideration of his case upon its merits.
N.C.Gen.Stat. § 148–58 (Cum.Supp.1974).

5. Kitchin, in response to this request, telephoned a prison supervisor who incorrectly reenforced Kitchin's misunderstanding—advising him that O'Tuel would be eligible for parole in 10 years.

6. 611 F.2d at 63.

Kitchin informed O'Tuel concerning the consequences of a conviction of first degree murder and that Kitchin's primary concern was the death penalty. It is scarce proof, however, of how large that concern loomed in O'Tuel's mind. Indeed, O'Tuel testified at his state post-conviction hearing that he did not discuss the possibility of the death sentence as a reason for entering into plea bargaining. Kitchin did not say what, if anything, O'Tuel told him concerning his major concern in accepting the plea bargain, but only gave the following opinion:

It is my opinion that Mr. O'Tuel accepted the plea to second degree murder based on the advice of Mr. Sharpe and myself and based on many factors within the knowledge of Mr. O'Tuel. It is further my opinion that he did consider the ten-year eligibility requirement for parole as a part of those factors in making up his mind as to whether to plead guilty to second degree murder or not. I do not believe that that was the controlling factor, but I do believe that it was a factor that was seriously considered by Mr. O'Tuel in making up his mind.

O'Tuel further testified that, because of his age and poor health, he would not have accepted the plea bargain if he had known that he would not be eligible for parole for 20 years. Even if the state court discounted O'Tuel's testimony as self-serving, the record is devoid of evidence to the contrary.

The fact that the transcript of the negotiated plea contained no reference to "eligibility of parole" likewise is inconclusive as to O'Tuel's concerns in pleading guilty. The transcript also contained no reference to the possibility of a death sentence as inducing the plea. Additionally, the transcript of the plea proceeding reveals that the trial court made no references to the possible consequences of a jury verdict of guilty in questioning O'Tuel as to the voluntariness of his plea.

The district court, in adopting the magistrate's recommendations, found that the findings of fact by the state court were entitled to the presumption of validity under 28 U.S.C. § 2254(d). *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Assuming that the state court's finding regarding O'Tuel's primary concern is the kind of finding of fact contemplated by section 2254(d), we do not think it is fairly supported by the record of the state court proceedings and thus that "finding" is not entitled to a presumption of validity. 28 U.S.C. § 2254(d)(8). Even if we reached a contrary conclusion, the most such a finding establishes is that the death penalty was a major or "primary" concern. That does not lessen the effect of O'Tuel's concern about his parole eligibility date. *Strader* teaches that if he relied on such gross misinformation in reaching his decision to plead guilty, then he has been deprived of his sixth amendment right to counsel. When it appears, as in the immediate case, that the guilty plea would not have been tendered if the defendant had been properly advised by his lawyer, the defendant's conviction must be vacated. Under such circumstances, the fact that other considerations significantly affected the plea decision is not determinative. The state court, therefore, committed an error of law in denying O'Tuel relief by simply categorizing his concerns as "primary" or "secondary."

On remand, North Carolina should be given the same alternatives articulated in *Strader:* it can reduce the sentence so as to provide a ten-year parole eligibility date from the time of sentence; otherwise, the writ should issue subject to the state's right to bring O'Tuel to trial within a reasonable period of time.[7]

**REVERSED AND REMANDED.**

---

7. 611 F.2d at 65. The 10-year parole eligibility date is, of course, subject to any adjustments that would have occurred in the usual course, such as credit for "good time."