**Henry Arthur LITTLE, Appellee,**

v.

**Harry ALLSBROOK, Attorney General of N.C., Appellant.**

**No. 83–6511.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1984.

Decided April 5, 1984.

---

trict court erred in issuing the writ and reverse.

## I.

In November, 1979, Little was arrested and charged with first-degree murder. In March, 1980, Little pleaded guilty to second-degree murder pursuant to a plea bargain his attorney, John Wilkinson, had negotiated with the State. According to the terms of the plea bargain, the State agreed not to pursue the charge of first-degree murder in exchange for Little's plea to second-degree murder. After questioning Little as to his understanding of the plea bargain and the voluntariness of his plea, the court accepted the guilty plea and sentenced Little to twenty-five to thirty years imprisonment.[1]

After exhausting his state court remedies, Little sought habeas relief in the federal district court. He alleged that Wilkinson had misled him into believing he would receive a sentence which would make him eligible for parole in five years, and that he had only entered the guilty plea because of this misrepresentation.

A hearing was held before a magistrate in March, 1983. At the hearing, Little stated that Wilkinson told him he had talked to the district attorney and "worked out a deal" under which Little "could make parole in five years ... if [he] plead[ed] guilty." According to Little, Wilkinson told him nothing else about the plea, and never said what the sentence would be. On cross-examination, Little asserted that he had lied under oath when upon entering his guilty plea he had indicated that he was satisfied with Wilkinson's services, and that no one had made any promises to cause him to enter the plea.[2] Little's wit-

Barry S. McNeill, Asst. Atty. Gen., Raleigh, N.C. (Rufus L. Edmisten, Atty. Gen. of N.C., Richard N. League, Sp. Deputy Atty. Gen., Raleigh, N.C., on brief), for appellants.

Richard T. Gammon, Raleigh, N.C. (Blackburn, Gammon & Umstead, Raleigh, N.C., on brief), for appellee.

Before HALL and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

K.K. HALL, Circuit Judge:

The State of North Carolina appeals from an order of the district court issuing a writ of habeas corpus on behalf of Henry Arthur Little. We conclude that the dis-

---

1. Under his plea of guilty to second-degree murder Little could have been sentenced anywhere from two years to life imprisonment, pursuant to a sole maximum term or a combination of maximum and minimum terms. N.C.Gen.Stat. § 14–17 (Cum.Supp.1979).

2. When Little sought to enter his plea the sentencing judge specifically asked "Have you discussed your case fully with your attorney and are you satisfied with his services?" Little, while under oath, responded in the affirmative. Subsequently, the sentencing judge asked "Any one made any promises or threatened you in any way to cause you to enter this plea?" Little answered "No, sir." Unlike Little, we attach considerable importance to this procedural dialogue. Although Little would now seek to disregard any significance attaching to those state-

nesses gave conflicting stories about what they had been told by Wilkinson.

Wilkinson testified on behalf of the State and denied ever having promised that if Little pleaded guilty he would be sentenced so as to be eligible for parole in five years. He also denied making any representations as to sentence or parole to Little's family. Wilkinson stated that he told Little that he might receive a sentence "somewhere between twenty and thirty years," and that when Little inquired about parole, Wilkinson had responded, "I don't know about parole.... As I understand the law, you will be eligible for parole when you serve one-fifth of your maximum sentence, but there ain't any maximum sentence as yet. We're still negotiating." Additionally, Wilkinson testified that he might have indicated to Little that he could be eligible for parole in fifteen years. Wilkinson maintained, however, that he had never told Little that he would receive a certain sentence. The parties stipulated that Little's parole eligibility date was November 22, 1995, approximately fifteen years from the date of his conviction.[3]

After evaluating the evidence presented at the hearing, the magistrate characterized Wilkinson's testimony as "very credible" and recommended that Little's petition be denied. The district judge adopted the magistrate's findings of fact without questioning the findings concerning Wilkinson's credibility, but disagreed with the magistrate's recommendation. The district judge found that Little had been "grossly misinformed about the parole possibilities by his lawyer and that he relied upon that misinformation in reaching his decision to plead guilty," and therefore concluded that Little was deprived of his constitutional right to effective assistance of counsel. Habeas relief was granted, and the State appeals.

## II.

On appeal, the State contends that Little's alleged expectation of parole did not render his plea involuntary, and, that, therefore, the district judge should have denied Little's petition for a writ of habeas corpus. We agree.

The district judge surmised that Wilkinson's prediction that Little might receive a sentence between twenty and thirty years, combined with his advice that Little would become eligible for parole after one-fifth of the maximum sentence, may have led Little to conclude that upon his guilty plea he would become eligible for parole in five years. The judge held that because under the sentence Little received his statutory parole eligibility is computed at twenty years rather than five years,[4] Wilkinson grossly misinformed Little about parole possibilities.[5] The district judge further

ments he made while under oath, we do not view his vows as empty gestures. In the absence of clear and convincing evidence to the contrary, Little must be bound by what he said at the time of his plea.

3. Little's current parole eligibility date is calculated as 15 years because of credits against his sentence by the North Carolina Department of Correction, as authorized under N.C.Gen.Stat. § 15A–1355(c) (Cum.Supp.1981).

4. Pursuant to N.C.Gen.Stat. § 15A–1371(a) (Repl.1979), "when the maximum allowed by law for the offense is life imprisonment, one fifth of the maximum is calculated as 20 years."

5. The judge concluded that Wilkinson's advice to Little concerning parole eligibility was incorrect because Little may have interpreted "one-fifth of your maximum sentence" to mean one-fifth of the sentence imposed, rather than one-fifth of the maximum penalty allowed by law

for the offense. Yet, pursuant to North Carolina law:

> Unless his sentence includes a minimum sentence, a prisoner serving a term other than life imprisonment or one included in a sentence of special probation imposed under authority of this Subchapter is eligible for release on parole *at any time.* A prisoner whose sentence includes a minimum term of imprisonment imposed under authority of this Subchapter is eligible for release on parole only upon completion of the service of that *minimum term or one fifth of the maximum penalty allowed by law for the offense for which the prisoner is sentenced, whichever is less,* ...

N.C.Gen.Stat. § 15A–1371(a) (Repl.1979) (emphasis added).

Thus, Wilkinson's advice, far from being incorrect, can at worst be deemed incomplete in that he did not explain the entire range of parole possibilities for the possible sentences

held that under *Strader v. Garrison,* 611 F.2d 61 (4th Cir.1979), and *O'Tuel v. Osborne,* 706 F.2d 498 (4th Cir.1983), Little's reliance upon this misinformation deprived him of his constitutional right to effective assistance of counsel. To the contrary, we hold that *Strader* and *O'Tuel* are inapplicable to the facts of this case.

In *Strader,* petitioner Strader escaped from prison while serving a sentence of forty-five to fifty-five years, and, after his recapture, was tried for an armed robbery which he allegedly committed while on escape. He agreed to plead guilty to the robbery with the understanding that he would be sentenced to thirty years to be served concurrently with his original sentence. Strader had only a few more years to serve before becoming eligible for parole on his original sentence. He expressed concern that the thirty-year sentence might further postpone his parole eligibility date, but he was assured by his lawyer that it would not. This advice was wrong, because under applicable regulations the thirty-year concurrent sentence required a recomputation of the period to be served to establish parole eligibility. Strader therefore entered his guilty plea believing that his new parole eligibility date would be several years sooner than the regulations permitted. This Court concluded that Strader was entitled to habeas relief because he had been grossly misinformed about parole eligibility and that he had relied upon that misinformation in pleading guilty. 611 F.2d at 65.

This Court reached a similar conclusion in *O'Tuel.* O'Tuel was charged with first-degree murder, and was offered the opportunity to plead to second-degree murder with life imprisonment. When O'Tuel asked about parole eligibility, his attorney advised him that applicable law considered a sentence of life imprisonment as commuted to forty years, and, therefore, O'Tuel would have to serve only ten years before he would be eligible for parole. Although

this previously had been the law, the controlling statute had been amended to provide that a prisoner serving a life sentence was eligible for parole consideration only after serving twenty years. After receiving his attorney's incorrect advice, O'Tuel pleaded guilty to second-degree murder and received a life sentence, as agreed upon in the plea bargain. This Court concluded that habeas relief was appropriate because O'Tuel had received gross misinformation in reaching his decision to plead guilty, and that he would not have entered the plea if he had been properly advised of his parole eligibility. 706 F.2d at 500–01.

One significant factor readily distinguishes this case from *Strader* and *O'Tuel:* both Strader and O'Tuel knew what sentence to expect from their pleas. Therefore, their attorneys could have researched the applicable law and advised them correctly as to parole eligibility. Indeed, as Judge Haynsworth commented in *Strader,* "This was not just a *prediction* which was not realized." 611 F.2d at 63 (emphasis added).

Conversely, in the instant case, Wilkinson never told Little that he would receive a certain sentence. Instead, Wilkinson merely predicted that Little might be sentenced "somewhere between twenty and thirty years." Neither Little nor Wilkinson knew what sentence would be imposed, and, therefore, any statement made by Wilkinson concerning parole eligibility was mere speculation.

An attorney's "bad guess" as to sentencing does not justify the withdrawal of a guilty plea and is no reason to invalidate a plea. In *Wellnitz v. Page,* 420 F.2d 935 (10th Cir.1970), the Tenth Circuit held that "an erroneous sentence estimate by defense counsel does not render a plea involuntary. And a defendant's erroneous expectation, based on his attorney's erroneous estimate, likewise does not render a plea involuntary." 420 F.2d at 936–7 (citations omitted) (cited with approval in *Unit-*

---

which Little might receive. Wilkinson did, however, state that he did not know when Little would be eligible for parole because he did not

know what sentence Little would receive. This statement was obviously correct and could not reasonably have been misconstrued by Little.

ed States v. White, 572 F.2d 1007, 1010 (4th Cir.1978)). *See also United States v. Futeral,* 539 F.2d 329, 330 (4th Cir.1975) (a plea was not rendered involuntary by the trial court's rejection of the prosecutor's sentence recommendation even though defendant had been told by his lawyer that the court accepted such recommendations in "80 to 90% of the cases"); *Vanater v. Boles,* 377 F.2d 898, 899–400 (4th Cir.1967) (defendant's plea to the felony upon which his recidivist conviction rested was not involuntary, even though defendant and his attorney believed that if defendant pleaded guilty the recidivism prosecution would be avoided).

Here, Little based his alleged expectation of parole eligibility solely on his attorney's sentence estimate and advice as to the parole eligibility formula. Because Little was never given specific assurance as to what his sentence would be, he could not have been "grossly misinformed" about his parole eligibility, and Wilkinson's advice could not have deprived him of his constitutional right to the effective assistance of counsel. To permit Little to vitiate his plea on the basis of his purported expectation would distort beyond reason the limits of *Strader* and *O'Tuel* and would open the door to habeas relief for all prisoners whose lawyers underestimated the length of their sentences. Such a holding would seriously undermine the finality of judgments entered pursuant to plea bargains.

### III.

For the foregoing reasons, we reverse the order of the district court granting the writ of habeas corpus.

REVERSED.

HAYNSWORTH, Senior Circuit Judge, dissenting:

I would affirm this judgment.

The lawyer himself testified that he had told Little that he thought Little might receive a sentence "somewhere between twenty and thirty years," a prediction which turned out to be quite accurate. He also testified that he told Little that he would be eligible for parole "when you serve one-fifth of *your* maximum sentence." (emphasis supplied). In combination, those statements by his lawyer seem to me fully to justify Little's claim that his expectation was that he would be eligible for parole in five years.

I do not think Little's answers to the inquiries made at the time of sentencing foreclose the present claim. He then had no reason to think that he had been misadvised or misled. Nor did he have reason to be dissatisfied with his lawyer's performance. The reason for his dissatisfaction arose later when he found that he would be required to serve fifteen to twenty years before becoming eligible for parole.

This is not a case in which the lawyer's prediction of the range of sentencing was far from the mark. The lawyer's prediction here that the sentence would be somewhere between twenty and thirty years was substantially realized when the twenty-five to thirty year sentence was imposed upon Little. Little was not misled because the sentence imposed by the judge was harsher than the one predicted. Little was grossly misled by the lawyer's representation that Little would become eligible for parole after service of one-fifth of *"your* maximum sentence." Applied to the lawyer's prediction of a sentence somewhere between twenty and thirty years, the lawyer's representation, not prediction, was that, under the law, Little would become eligible for parole in four to six years if the sentence actually imposed was within the range the lawyer predicted. The advice was patently and flagrantly wrong since, under the law, parole eligibility must be computed on the basis of the statutory maximum sentence for second degree murder, which is life imprisonment. To Little, there is all the difference in the world between a sentence with a parole eligibility of four to six years and one with a basic parole eligibility of twenty years.

I conclude that Little was grossly misled just as the petitioners were in *Strader v. Garrison,* 611 F.2d 61 (4th Cir.1979), and

*O'Tuel v. Osborne*, 706 F.2d 498 (4th Cir. 1983).

For these reasons, I respectfully dissent.