**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellant,</u>

v.                                                                     No. 97-7267

SUBHASH GAJENDRAGADKAR, M.D.,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Elizabeth V. Hallanan, Senior District Judge.
(CR-96-65, CA-97-377-5)

Argued: April 7, 1998

Decided: June 3, 1998

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael Lee Keller, Assistant United States Attorney,
Charleston, West Virginia, for Appellant. Thomas W. Smith, Charles-
ton, West Virginia; Dina Mattingly Mohler, KAY, CASTO,
CHANEY, LOVE & WISE, Charleston, West Virginia, for Appellee.
**ON BRIEF:** Rebecca A. Betts, United States Attorney, Philip J.
Combs, Assistant United States Attorney, Charleston, West Virginia,
for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Here we face the case of Dr. Subhash Gajendragadkar (Dr. Sub-hash), a twenty-year resident alien from India who practices medicine in West Virginia. In 1996, Dr. Subhash was indicted on two counts of mail fraud stemming from alleged over-billing of patients at his medical practice. At that time, a non-citizen convicted of an "aggra-vated felony" involving fraud or deceit was subject to deportation, pursuant to 8 U.S.C. § 1251(a)(2)(A)(iii), if the amount of loss result-ing from the crime exceeded $200,000, see§ 1101(a)(43)(M)(i). The Government estimated that $40,000 to $70,000 of losses were attrib-utable to Dr. Subhash. After conferring with counsel and receiving assurances that a conviction would not result in his deportation,**1** Dr. Subhash pled guilty to both counts.

On September 30, 1996, fourteen days after the entry of Dr. Subhash's guilty plea, Congress retroactively amended § 1101(a)(43)-(M)(i), reducing the definitional amount of loss for aggravated felo-nies from $200,000 to $10,000.**2** Thereafter, Dr. Subhash received a notice of detainer from the Immigration & Naturalization Service, informing him that he was being investigated for deportation as a result of his conviction. On April 14, 1997, Dr. Subhash filed a motion, pursuant to 28 U.S.C. § 2255, to vacate his conviction and

_____

**1** Those assurances took two forms. First, counsel for Dr. Subhash informed him that, based on the amount of loss estimated by the Govern-ment, his crimes did not constitute aggravated felonies under § 1101(a)(43)(M)(i). Second, when Dr. Subhash inquired about the risk of retroactive changes in the law, counsel advised him that the Ex Post Facto Clause would shield him from any such changes. The latter advice was erroneous. See Bugajewitz v. Adams, 228 U.S. 585 (1913) (holding the Ex Post Facto Clause inapplicable to deportation of aliens).
**2** In addition, the text of § 1251(a)(2)(A)(iii) was recodified, without change, at 8 U.S.C. § 1227(a)(2)(A)(iii).

2

sentence. As grounds for that motion, he asserted, <u>inter alia</u>, that his guilty plea was invalid as a result of ineffective assistance of counsel arising from misinformation regarding the danger of retroactive changes in the law. The district court agreed and granted Dr. Subhash's motion to vacate the plea.

The well-established test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." <u>Hill v. Lockhart</u>, 474 U.S. 52, 56 (1985) (quoting <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970)). Where, as here, a defendant asserts ineffective assistance of counsel as grounds for vacating a guilty plea, our analysis is guided by the two-prong standard articulated by the Supreme Court in <u>Hill</u> and its predecessor, <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Pursuant to that analysis, we must first determine whether counsel's performance was so deficient that he or she "was not functioning as the `counsel' guaranteed . . . by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. To determine whether such deficiency has occurred, we apply a test of objective reasonableness, asking, in light of "prevailing professional norms," whether counsel was "a reasonably competent attorney" and whether the advice given was "within the range of competence demanded of attorneys in criminal cases." <u>Id.</u> at 669 (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 770-71 (1970)). Second, we must determine "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." <u>Hill</u>, 474 U.S. at 57. To do so, we ask whether it appears by a "reasonable probability" that, but for counsel's errors, the defendant would not have accepted the plea agreement. **3** <u>See id.</u>

In the present case, we agree with the district court that the first prong of <u>Strickland</u> is satisfied. We have previously held that an attorney's conduct falls below prevailing standards of professional competence where counsel affirmatively misinforms the defendant about a legal consequence of a plea agreement, even if the consequence might otherwise have been described as "collateral." <u>See Ostrander</u>, 46 F.3d

_____

**3** Issues arising pursuant to ineffective assistance of counsel claims present mixed questions of law and fact. <u>See Strickland</u>, 466 U.S. at 698; <u>Ostrander v. Green</u>, 46 F.3d 347, 354 (4th Cir. 1995), <u>overruled on other grounds</u>, <u>O'Dell v. Netherland</u>, 95 F.3d 1214 (4th Cir. 1996) (en banc).

at 355 ("[W]here the client asks for advice about a `collateral conse-quence' and relies upon it in deciding whether to plead guilty, the attorney must not grossly misinform his client about the law."); Strader v. Garrison, 611 F.2d 61 (4th Cir. 1979) (same). Here, the record demonstrates that Dr. Subhash repeatedly questioned his attorney about the risk of deportation, and that in response to those inquiries counsel erroneously assured Dr. Subhash that he would not be subject to deportation now or in the future. In light of those facts, we have no difficulty concluding that counsel's performance was constitutionally deficient.

Moving to the second prong of Strickland, we must determine, in light of Hill, "whether a reasonable defendant in [Dr. Subhash's] shoes, having asked for, received, and relied upon encouraging advice" about the risks of deportation, "would have pled guilty anyway had he known" that his attorney was mistaken. Ostrander, 46 F.3d at 356. We agree with the district court that the answer is no. As the record clearly demonstrates, concerns over the possibility of deportation were foremost in Dr. Subhash's mind during the plea bargaining process. We believe there is a reasonable probability that, in the absence of counsel's errors, Dr. Subhash, a twenty-year resident alien whose wife and daughter are U.S. citizens and whose medical practice is established in West Virginia, would have passed up the Government's offer of a plea agreement. Although a trial would still present the risk of deportation, it would provide Dr. Subhash the opportunity to contest the Government's evidence or, failing that, to challenge the Government's estimate of loss.

The judgment of the district court is accordingly

AFFIRMED.

4