Sheldon G. **KEENER**, Petitioner,

v.

Richard E. **BAZZLE**; and Attorney General of the State of South Carolina Respondents.

**C.A. No. 6:06–48–PMD–WMC.**

United States District Court,
D. South Carolina.

March 21, 2007.

Melody Jane Brown, Donald John Zelenka SC Attorney General's Office, Columbia, SC, for Respondents.

### ORDER

DUFFY, District Judge.

This matter is before the court upon the Magistrate Judge's recommendation that Respondents' Motion for Summary Judgment be granted in part and denied in part. The Record contains a Report and Recommendation ("R & R") of a United States Magistrate Judge which was made in accordance with 28 U.S.C. § 636(b)(1)(B).[1] A dissatisfied party may object, in writing, to an R & R within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). On December 22, 2006, Respondents filed timely objections to the R & R.

### BACKGROUND

Sheldon G. Keener ("Keener" or "Petitioner") is currently incarcerated at Perry Correctional Institution in Pelzer, South Carolina. Petitioner was indicted for two murders, one that occurred in November of 1999 and another that occurred in August of 2000. Attorney N. Gruber Sires represented Petitioner on these charges. On November 29, 2000, Petitioner pleaded guilty to the 2000 murder and entered a plea of guilty of voluntary manslaughter with respect to the other death. Pursuant to the guilty plea negotiations, the State recommended a sentence of 30 years on both charges, and Petitioner was sentenced to 30 years imprisonment on each charge, with the sentences to be served concurrently.

Petitioner filed a *pro se* application for post-conviction relief ("PCR") on December 4, 2001, and attorney Charles R. Hughes was appointed to represent Petitioner in his PCR action on December 10, 2001. Petitioner raised several grounds for relief, some of which are listed verbatim as follows:

a. Applicant was not given proper sentencing advice. Claimant did not realize that his convictions would require him to serve 30 years day[ ] for day. Due to not being given proper sentencing advi[c]e regarding no parole offenses and amount of time Applicant would need to serve, Applicant believes his convictions should be overturned.

b. On Indictment 99–GS–37–1190 Claimant was not given adequate review of the evidence against him. If he had adequate information, Claimant would have discovered that the victim on this charge was already dead when he shot the Victim (please see attached Autopsy) and therefore Applicant was not guilty

---

1. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1), and Local Rule 73.02(B)(2)(e), D.S.C., the Magistrate Judge is authorized to review all pretrial proceedings involving litigation by individuals proceeding pro se, and submit findings and recommendations to this Court.

of criminal homicide in any degree in the death of the victim.

c. On Indictment# 2000–GS–37–686, Applicant's Counsel was ineffective in his method of preparing this case. He was not made aware that he had defenses such as self-defense, defense of other, and no duty to retreat. If Applicant had know about these defenses he would not have pled guilty. (*See* Applicant's Attached Statement regarding the hearing this charge.)

d. Conflict of interest in that the Deputy Solicitor Chrissy Adams was seeking the victim's assistance in the Indictment # 2000–GS–37–686 charge in an unrelated criminal investigation. Therefore the 10th Circuit Solicitor's office should have been recused from prosecuting the case.

e. Applicant's attorney was ineffective for waiving a preliminary hearing at which time this information would have come to light since that Applicant was not made aware of it at the time by his attorney. He pled guilty without the information he needed to make an informed waiver of a jury trial.

. . .

i. Applicant would not have pled guilty but for the above errors, singly and collectively, and seek[s] the overturning of his convictions.

A written order of dismissal was filed on June 25, 2004, and Petitioner appealed the denial of relief. Petitioner's appellate counsel filed a petition for writ of certiorari in the Supreme Court of South Carolina on November 19, 2004, which raised one issue: whether defense counsel was ineffective in failing to properly advise Petitioner of his parole eligibility prior to his pleading guilty. The Supreme Court of South Carolina denied the petition for review on December 14, 2005, and on December 30, 2005, the state court issued the remittitur.

In January of 2006, Petitioner filed his petition under 28 U.S.C. § 2254 for writ of habeas corpus. In his *pro se* petition, Keener asserts the following ground for relief (verbatim):

Ineffective Assistance of Trial Counsel: Failed to have requested evidential hearing's in my behalf caused what available facts there were not to be used in fact. Acting on sole advice of counsel with the spector of death or plea coeced the plea bargain. The plea's were further coerced with a erroneous parole date, and that breaches the contract due to no fault of mine. (Proof attached.)

Respondents filed a Motion for Summary Judgment on March 16, 2006, and Petitioner filed his Response in Opposition on March 27, 2006.

Magistrate Judge Catoe issued an R & R on December 11, 2006. Judge Catoe recommended Respondents' Motion for Summary Judgment be granted in part and denied in part. The Magistrate Judge stated, "The petitioner's allegation of ineffective assistance of counsel is premised on two assertions: (1) counsel failed to request an evidentiary hearing, and (2) counsel failed to correctly advise him on parole." (R & R at 5.) Judge Catoe recommended summary judgment be granted with respect to Petitioner's claim of ineffective assistance of counsel for failure to request an evidentiary hearing. The Magistrate Judge found Petitioner was procedurally barred from making this claim and that the claim failed on the merits. (R & R at 5–6.)

With respect to his claim of ineffective assistance of counsel for failure to correctly advise him on parole, the Magistrate Judge recommended summary judgment be denied. At the PCR hearing, Petitioner's counsel admitted he advised Petitioner that he would be required to serve 85% of the sentence and would then be eligible for

release, when in fact Petitioner would have to serve every day of the sentence. (PCR App. 86.) Counsel further testified that Petitioner "was more worried about the electric chair and the life sentence than he was about the parole eligibility. I know I was." (PCR App. 87.) The Petitioner, however, testified that he would not have pleaded guilty had he known he would have to serve 30 years day to day. (PCR App. 61–62.) The PCR judge denied relief on this claim, finding Petitioner "failed to show that he suffered any prejudice as a result of that error. There is no reasonable probability that, but for that particular advice, he would not have pled guilty, but would have proceeded to trial on the murder charges." (PCR App. 121–22.) Magistrate Judge Catoe recommended Respondents' Motion for Summary Judgment be denied with respect to this claim, finding the "PCR judge's ruling on this claim . . . does not follow circuit precedent and is based on an unreasonable determination of the facts." (R & R at 8.)

## STANDARD OF REVIEW

### A. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir.1990).

### B. Magistrate Judge's R & R

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R & R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R & R. 28 U.S.C. § 636(b)(1). After a review of the entire record, the R & R, and Petitioner's objections, the court finds that the Magistrate Judge fairly and accurately summarized the facts. However, as the court agrees with Respondents' Objection, the court will modify the R & R.

## ANALYSIS

### A. Section 2254 Petitions

With respect to those claims that were adjudicated by the state court on their merits, habeas relief is warranted only if a petitioner can demonstrate that the adjudication of his claims by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court explained that

§ 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. *Id.* at 404–05, 120 S.Ct. 1495. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405–06, 120 S.Ct. 1495. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id.* at 407–08, 120 S.Ct. 1495.

 "The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable." *Woodford v. Visciotti,* 537 U.S. 19, 27, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002). "The focus of the [unreasonable application] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and ... an unreasonable application is different from an incorrect one." *Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). A federal habeas court may not issue the writ under the "unreasonable application" clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams,* 529 U.S. at 411, 120 S.Ct. 1495.

**B. Objections**

Respondents object to the Magistrate Judge's determination "that the state court failed to follow circuit precedent and based its decision on an unreasonable determination of the facts in regard to Petitioner's issue alleging ineffective assistance of counsel in erroneously advising Petitioner regarding parole eligibility." (Objections at 1.) Respondents argue that "[w]hile the Magistrate here identified the controlling standard of review, it appears the Magistrate gave too much weight to circuit precedent which included recitation of facts wholly distinguishable from the facts in the instant case, and failed to include the mandatory deference to the state court decision." (Objections at 2.)

At the PCR hearing, Keener testified that he would not have pled guilty if he had been correctly advised regarding his eligibility for parole:

Q. What was your understanding when you pled guilty to 30 years that your sentence would be on those 30 years?

A. That there would be a 24–year parole date.

Q. A 24–year parole date?

A. Yes.

Q. Okay. Why do you think that?

A. Mr. Sires told me that before the hearing if I wanted to go ahead and plead to the murder to run concurrent with the manslaughter, and I agreed to that. So he left and he came back and he said, but we've got one problem. He said, they want a 24–year parole date. Which I did get the 24–year parole date. But the Department of Corrections says that I'm not eligible for anything.[2]

Q. Okay. And why is that?

---

**2.** This testimony seems to indicate Petitioner decided to plead guilty prior to discussing parole eligibility with his attorney. However,

Mr. Sires testified that he did discuss parole eligibility prior to Keener's guilty plea. (PCR App. 86.)

A. Under the new two strike law, two violent offenses mandates no parole.

Q. Okay. You did not think you were going to have to do 30 years day-to-day?

A. No.

. . .

Q. All right. So if you had known that you were pleading guilty and were going to receive 30 years day-to-day, would you have pled guilty?

A. No.

Q. Okay. Are you asking that your sentence be overturned because you were given improper advice regarding sentencing by your attorney?

A. Yes.

(PCR App. 60–62.) The following is a portion excerpted from Mr. Sires's testimony at the PCR hearing:

Q. Do you recall any discussions you may have had leading up to this guilty plea about parole eligibility?

A. I may have made a mistake then, I'll admit that. I may have told him it was 85% on the 30 years on both of those charges. I understand now that murder is day for day.

Q. Okay.

A. I was concerned about them giving him the needle, going for the death penalty, because he killed one person or was involved in a killing of one, got out [of jail], and was involved in this other one, so we had two murders within a short

period of time, one was done when he was out on bond for the other one. . . .

Q. Okay. In your discussions with him, did it seem to you that one of the critical elements for him in deciding to plead guilty was his parole eligibility, did that make a critical difference, or was he more worried about the possibility of a life sentence?

A. I think he was more worried about the electric chair and the life sentence than he was about the parole eligibility. I know I was.

(PCR App. 86–87.)

█ The PCR court identified *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) as the standard by which to review Petitioner's claim of ineffective assistance of counsel.[3] Finding Petitioner's testimony not credible and trial counsel's testimony credible, the PCR judge stated,

This Court does find that trial counsel misadvised the Applicant regarding his parole eligibility. However, this Court does not find that the Applicant based his decision to plead guilty on that advice. Rather, the Applicant chose to plead guilty because of the overwhelming evidence and his desire to avoid the specter of the death penalty due to the circumstances of the case.

Given the above findings, the Applicant has failed to carry his burden of

---

**3.** In *Strickland,* the Supreme Court held that a meritorious ineffective assistance of counsel claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. 466 U.S. at 687–96, 104 S.Ct. 2052. A court's evaluation of counsel's performance under this standard must be "highly deferential," so as not to "second-guess" the performance. *Id.* at 689, 104 S.Ct. 2052. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must over-

come the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Fields v. Att'y Gen. of Md.,* 956 F.2d 1290, 1297–99 (4th Cir.1992); *Roach v. Martin,* 757 F.2d 1463, 1476 (4th Cir.1985). In the context of a guilty plea, the prejudice prong requires a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

proof. The only aspect of trial counsel's performance that fell below reasonable professional standards was his advice on parole eligibility. The Applicant has failed to show that he suffered any prejudice as a result of that error. There is no reasonable probability that, but for that particular advice, he would not have pled guilty, but would have proceeded to trial on the murder charges.

(PCR App. 121–22.) The PCR judge denied relief.

In recommending this court deny in part Respondents' Motion for Summary Judgment, the Magistrate Judge relied on two Fourth Circuit opinions: *Strader v. Garrison*, 611 F.2d 61 (4th Cir.1979), and *O'Tuel v. Osborne*, 706 F.2d 498 (4th Cir.1983). In *Strader*, North Carolina appealed a district court's grant of habeas corpus relief to a prisoner who pled guilty upon the "gross misadvice by his lawyer respecting the effect of the new sentence upon his parole eligibility date." *Strader*, 611 F.2d at 62–63. Strader escaped from prison, and after he was recaptured, he was charged with crimes allegedly committed during the period between his escape and recapture. *Id.* at 63. In deciding whether to plead guilty, Strader expressed concern that the new sentence would postpone his parole eligibility date, and he was incorrectly "assured by the lawyer that it would not." *Id.* The Fourth Circuit found the district court correctly granted relief:

> Here, though parole eligibility dates are collateral consequences of the entry of a guilty plea of which a defendant need not be informed if he does not inquire, when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel. When the erroneous advice induces the plea, permitting him to start over again

is the imperative remedy for the constitutional deprivation.

*Id.* at 65.

In *O'Tuel*, the petitioner contended his guilty plea "was entered involuntarily and unintelligently because it was induced by gross misinformation of his counsel concerning his parole eligibility date." 706 F.2d at 499. O'Tuel's attorney advised him he would be eligible for parole in ten years, when in reality he would be eligible for parole only after serving twenty years. *Id.* The Fourth Circuit noted the record revealed two considerations "bore heavily on O'Tuel's decision to plead guilty: the possibility of receiving the death sentence … and his parole eligibility date." *Id.* at 500. In the Fourth Circuit's view, "[i]t is significant that O'Tuel's principal response to … overtures [regarding taking the plea bargain] from Kitchin[, his attorney,] and his family was to inquire as to his parole eligibility date in the event he pled guilty …." *Id.* The state court denied PCR, finding O'Tuel's "primary concern in entering his plea was the possibility of receiving the death penalty." *Id.* The Fourth Circuit, however, held the petitioner was entitled to relief:

> The district court, in adopting the magistrate's recommendations, found that the findings of fact by the state court were entitled to the presumption of validity … Assuming that the state court's finding regarding O'Tuel's primary concern is the kind of finding of fact contemplated by section 2254 ( [e] ), we do not think it is fairly supported in the record of the state court proceedings and thus that "finding" is not entitled to a presumption of validity. Even if we reached a contrary conclusion, the most such a finding establishes is that the death penalty was a major or "primary" concern. That does not lessen the affect of O'Tuel's concern about his parole eligibility date. *Strader* teaches that if he relied on such gross information in

reaching his decision to plead guilty, then he has been deprived of his sixth amendment right to counsel.

*Id.* at 501 (citations omitted).

Both *Strader* and *O'Tuel*, however, were decided before the Antiterrorism and Effective Death Penalty Act of 1996 became effective. *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214. This Act amended § 2254 by adding subsection (d), the subsection which governs the case *sub judice*. *See* Antiterrorism and Effective Death Penalty Act of 1996 § 104. Thus neither *Strader* nor *O'Tuel* applied the § 2254(d) standard.[4]

 As previously noted, the Magistrate Judge found the PCR judge's ruling did not follow circuit precedent and was based on an unreasonable determination of the facts. (R & R at 8.) The PCR judge identified and applied *Strickland* in evaluating Petitioner's claim for ineffective assistance of counsel. Because the state court used the correct rule of law, and because the state court did not decide a case differently than the Supreme Court on a set of materially indistinguishable facts, federal habeas relief is not available to Petitioner under the "contrary to" clause of § 2254(d)(1). *See Williams,* 529 U.S. at 405–06, 120 S.Ct. 1495.[5] For this court to issue the writ, then, Petitioner must be entitled to relief under either (1) the "unreasonable application" clause of § 2254(d)(1), or (2) § 2254(d)(2). A federal habeas court may grant relief under the

---

4. The facts of *Strader* and *O'Tuel* are distinguishable from the facts in the case *sub judice*. At the time of his guilty plea, Strader was eligible for parole in a few years; he was concerned about the impact the new sentences would have upon his parole eligibility. *See Strader,* 611 F.2d at 63. Likewise, O'Tuel was so concerned about his parole eligibility date that he had his attorney verify this information with a prison official. *See O'Tuel,* 706 F.2d at 500. While Keener's attorney gave him incorrect advice regarding parole eligibility, there is no evidence that Petitioner expressed great concern over his parole eligibility date prior to entering his plea.

5. In *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the petitioner filed a federal habeas corpus petition alleging "his guilty plea was involuntary by reason of ineffective assistance of counsel because his attorney had misinformed him as to his parole eligibility date. According to petitioner, his attorney had told him that if he pleaded guilty he would become eligible for parole after serving one-third of his prison sentence. In fact, because petitioner previously had been convicted of a felony in Florida, he … was required to serve one-half of his sentence before becoming eligible for parole." *Hill,* 474 U.S. at 54–55, 106 S.Ct. 366. The Supreme Court affirmed the denial of relief, finding the petitioner had not demonstrated the prejudice prong of *Strickland:*

In the present case the claimed error of counsel is erroneous advice as to eligibility for parole under the sentence agreed to in the plea bargain. We find it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel, because in the present case we conclude that petitioner's allegations are insufficient to satisfy the *Strickland v. Washington* requirement of "prejudice." Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty. Indeed, petitioner's mistaken belief that he would become eligible for parole after serving one-third of his sentence would seem to have affected not only his calculation of the time he likely would serve if sentenced pursuant to the proposed plea agreement, but also his calculation of the time he likely would serve if he went to trial and were convicted.
*Hill,* 474 U.S. at 60, 106 S.Ct. 366.

"unreasonable application" clause of § 2254(d)(1) if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Williams,* 529 U.S. at 407–08, 120 S.Ct. 1495. The court may grant relief under § 2254(d)(2) if the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

The court is unsure whether the Magistrate Judge recommended denying the Motion for Summary Judgment pursuant to the "unreasonable application" clause of § 2254(d)(1) or pursuant to § 2254(d)(2), but such a determination is unnecessary, as neither provision entitles Petitioner to relief. The PCR judge's determination that Petitioner failed to establish the prejudice prong of *Strickland* is not an unreasonable application of that principle to Petitioner's case, nor is the PCR court's adjudication based on an unreasonable determination of the facts in light of the evidence presented.

In the context of a guilty plea, the prejudice prong requires a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial. *Hill,* 474 U.S. at 59, 106 S.Ct. 366. The PCR judge determined Petitioner chose to plead guilty because of the overwhelming evidence and his desire to avoid the specter of the death penalty due to the circumstances of the case, (PCR App. 121), and this determination is not unreasonable. Under § 2254, factual determinations made by the state court are presumed correct, and Petitioner has the burden of rebutting this presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also McWee v. Weldon,* 283 F.3d 179, 186 (4th Cir.2002) (affording deference to a state court's credibility determination). Furthermore, Keener states in his § 2254 petition that he pled guilty, at least in part, due to the "spector [sic] of death." Thus, the PCR did not unreasonably apply *Strickland* or base its adjudication on an unreasonable determination of the facts.[6] The court therefore finds that

6. In *Padilla v. Keane,* 331 F.Supp.2d 209 (S.D.N.Y.2004), the district court considered a § 2254 petition in which Padilla alleged he received ineffective assistance of counsel in that he received erroneous advice regarding his eligibility for parole. *Id.* at 211. Counsel incorrectly advised the petitioner when he would be eligible for parole, but the district court found Padilla "failed to establish the requisite prejudice necessary for reversal of a state court conviction." *Id.* at 216. The district court considered several factors to "gauge the likelihood that a particular defendant would have chosen to face trial if he had been provided more accurate information from counsel": (1) whether the record supports a finding that the defendant pled voluntarily; (2) the specific circumstances surrounding a defendant's decision; and (3) whether a defendant has provided any new evidence to suggest that he would in fact have acted differently but for his attorney's flawed advice. *Id.* at 216–17.

With respect to the first factor, the district court noted the petitioner "explicitly stated in his allocution that he fully underst[ood] the consequences of his plea and the he ... chose[ ] to plead guilty after a thorough consultation with his attorney." *Id.* at 217. The court also found the second factor weighed against finding prejudice, as the "Second Circuit has suggested that when the evidence of a defendant's guilt is overwhelming, the burden of demonstrating prejudice ... is virtually insurmountable." *Id.* The third factor also weighed against a finding of prejudice, as the district court noted "conclusory unsworn allegations that a defendant *would* have chosen differently than he did are generally insufficient to establish actual prejudice under *Strickland.*" *Id.* at 218.

Using this framework, Keener is not entitled to relief under § 2254 because, like Padilla, he cannot establish the prejudice prong of *Strickland.* At Keener's plea hearing, the

Respondents' Motion for Summary Judgment must be granted.

## CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Respondents' Motion for Summary Judgment is **GRANTED.**

**AND IT IS SO ORDERED.**

judge discussed the two separate indictments and Keener's plea. Keener indicated he understood the maximum sentences for each of the two charges to which he was pleading guilty. (PCR App. 7–8.) He also indicated he was aware that he was giving up certain constitutional rights by pleading guilty and that he was admitting the truth of the charges made against him. (PCR App. 9.) While the Fourth Circuit does not have a "virtually insurmountable" burden of demonstrating prejudice when evidence of guilt is overwhelming, Mr. Sires's testimony at the PCR hearing indi-cates the State had strong evidence of Keener's guilt, in the form of eyewitness testimony and Keener's voluntary statement. (PCR App. 84, 87–89.) In addition, Mr. Sires's testimony indicates he may have given incorrect advice concerning parole *eligibility,* (PCR App. 86), but as the court in *Padilla* states, "eligibility for parole does not equate to a *guarantee* that he would actually be released after such time." *Padilla,* 331 F.Supp.2d at 218 n. 5. Using the factors from *Padilla* as a guide, Keener is not entitled to relief pursuant to § 2254.