# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Keith R.,**
**Petitioner Below, Petitioner**

**vs) No. 19-0225** (Greenbrier 16-C-117)

**Donnie Ames, Superintendent,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**July 30, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Keith R.,[1] by counsel Carrie F. DeHaven, appeals the February 15, 2018, order of the Circuit Court of Greenbrier County that denied his petition for post-conviction habeas corpus relief. Respondent Donnie Ames,[2] Superintendent, Mount Olive Correctional Complex, by counsel Andrea Nease-Proper, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2011, petitioner was indicted on three counts of sexual abuse by a parent, guardian, or custodian in Criminal Action No. 11-F-111. The alleged victim was petitioner's sixteen-year-old stepdaughter, G.S. Four months later, in Criminal Action No. 11-F-162, petitioner

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] Petitioner originally listed Ralph Terry as the respondent in this matter. However, Donnie Ames has subsequently taken the position of superintendent at Mt. Olive Correctional Complex. Therefore, the appropriate public officer has been substituted in accordance with Rule 41 of the Rules of Appellate Procedure.

was indicted on one count of sexual assault in the first degree; five counts of sexual abuse by a parent, guardian, or custodian; five counts of incest; and four counts of sexual abuse in the third degree. The alleged victim was fifteen-year-old M.S.

On December 18, 2012, petitioner entered *Alford*/*Kennedy*[3] pleas to (1) one count of sexual abuse by a parent, guardian, or custodian in Criminal Action No. 11-F-111 and to (2) one count of incest in Criminal Action No. 11-F-162 in exchange for the State dismissing the remaining sixteen felony counts in both actions. The plea agreement contained no sentencing recommendation, but the State reserved the right to comment at petitioner's sentencing hearing.

Prior to sentencing, petitioner was on home confinement, but he was delivered into the custody of the Commissioner of Corrections for the purpose of diagnosis and classification pursuant to West Virginia Code § 62-12-7a. Thereafter, at petitioner's June 25, 2013, sentencing hearing, petitioner asked the circuit court to sentence him to home confinement claiming he had been on home confinement since his plea, was employed on a full-time basis, and had complied with all the requirements imposed upon him. Instead, the court sentenced petitioner to not less than ten nor more than twenty years in prison for the count of sexual abuse by a parent, guardian, or custodian, and not less than five nor more that fifteen years in prison for the count of incest. The circuit court ordered that the sentences run consecutively. The court also imposed a period of ten years of supervised release in accordance with West Virginia Code § 62-12-26, following petitioner's release from incarceration.

Petitioner appealed that conviction to this Court, and we affirmed petitioner's conviction in *State v. Keith R.*, No. 13-0768, 2014 WL 1686932 (W. Va., Apr. 28, 2014)(memorandum decision).

On June 10, 2016, petitioner filed a petition for a writ of habeas corpus acting as a self-represented litigant. Thereafter, the habeas court appointed counsel who filed petitioner's amended petition and a completed *Losh*[4] list on January 16, 2018. In that list, petitioner waived all grounds for relief except those raised in his amended habeas petition, *i.e.*, ineffective assistance of counsel; involuntary guilty plea; and severer sentence than expected.

At petitioner's December 10, 2018, omnibus evidentiary hearing, petitioner called his trial counsel, Robert P. Dunlap, who testified as follows: (1) the two victims allegedly made similar claims of sexual abuse against a person in North Carolina; (2) he tried to get records substantiating that claim by contacting the local prosecutor and local health and human services office, but he found nothing; (3) hiring an investigator might have helped, but he did not believe the cost would be approved given that the investigator would have to travel to North Carolina; (4) one or two

---

[3] *See Kennedy v. Frazier*, 178 W. Va. 10, 357 S.E.2d 43 (1987). In *Kennedy*, this Court relied upon the decision of the United States Supreme Court in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), in which that Court affirmed there are no constitutional barriers to prevent a judge from accepting a guilty plea from a defendant who wants to plead guilty while still protesting his innocence.

[4] *See Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981).

juvenile male witnesses were slated to testify about the contact he/they saw between petitioner and the victims; (5) he did not remember a plea offer with a single charge; (6) petitioner refused all plea offers that required him to admit guilt; (7) petitioner authorized him to speak with petitioner's daughter regarding the plea negotiations; (8) based on petitioner's good conduct on home arrest prior to his plea, he told petitioner he believed petitioner would be sentenced to home confinement; (9) he also told petitioner that if he was convicted on all counts, the court would likely run the sentences consecutively for a total of about 290 to 300 years in prison; (10) he would have gone over petitioner's constitutional rights with him; (11) it appeared that the State intended to bring a third indictment against petitioner; (12) he recommended that petitioner plead guilty because he was unable to obtain any evidence showing that the victims had accused someone else of sexual abuse; and (13) as for petitioner's sentence, he believed the court focused on petitioner's failure to take responsibility for his crimes.

Petitioner's daughter also testified during petitioner's case-in-chief. She testified that (1) petitioner did not understand "technical lingo;" (2) she attended two meetings between petitioner and his trial counsel; (3) she vaguely recalled a discussion where petitioner could plead guilty to a single charge but believed petitioner would not accept it because he would have to admit guilt; (4) she confirmed that trial counsel told petitioner that, if he pled guilty, he would probably get little to no time in prison and likely remain on home incarceration; (5) she did not recall trial counsel telling petitioner about the maximum time he could receive or the rights he would be giving up if he pled guilty; and (6) she admitted that petitioner would have had many meetings with his trial counsel that she did not attend.

Petitioner next called Deborah S., his sister, who testified that (1) she attended about six meetings between petitioner and trial counsel but was not present when petitioner was offered a plea to a single count; (2) she heard trial counsel tell petitioner that it was not in his best interests to go to trial; (3) she did not remember trial counsel telling petitioner what rights he would be giving up if he pled guilty; (4) she did recall that trial counsel told petitioner he could get a maximum of fifteen years in prison on each of the two counts to which he was pleading guilty, or, if petitioner went to trial, he could get fifteen years on each of the seventeen counts pending against him; (5) she was present for the presentation of the plea offer to two counts; and (6) she said petitioner's counsel initially believed he could prevail at trial but later was more inclined to suggest a plea.

Petitioner testified that (1) the first plea offer, which might have been made prior to the second indictment, required that he plead guilty to one count; (2) he rejected the first plea offer because it required him to enter a guilty plea, and his trial counsel believed he had a good chance at trial; (3) counsel was unable to confirm the North Carolina allegations; (4) he failed to follow up on a list of ten names petitioner gave to him as potential witnesses; (5) trial counsel advised him that he could get home confinement if he pled guilty, but counsel did not guarantee home confinement and said that petitioner's sentence was up to the judge; (6) he knew he could reject the plea offer and go to trial; (7) he met with trial counsel at least eight times; (8) trial counsel reviewed the plea agreement with him but not his rights; and (9) he took the *Kennedy* plea because he "gave up" after his parental rights were terminated at the conclusion of his children's abuse and neglect proceedings and his divorce was finalized.

On February 15, 2018, the habeas court denied the requested relief. The habeas court found that trial counsel was not ineffective because he investigated petitioner's claims regarding the victims' alleged allegations of other abuse to the extent possible. The habeas court also found that petitioner's trial counsel properly advised petitioner that, while his chances of home incarceration were good, the judge had the final say and there was no promise of leniency. Regarding petitioner's sentence, the habeas court found that it was within statutory limits and there was no basis to overturn it.

Petitioner now appeals the court's denial of habeas relief.

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

Petitioner raises three assignments of error on appeal. Petitioner first argues that the habeas court erred in failing to find that petitioner was provided ineffective assistance of counsel.

In syllabus point 5 of *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995), we held that,

> [i]n the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Petitioner claims his trial counsel failed to provide effective assistance of counsel because he did not adequately investigate the allegation that the victims accused a North Carolina man of sexual abuse, but later recanted those allegations. Petitioner claims that his trial counsel made only a few phone calls in that regard instead of hiring an investigator to investigate the victims' recanted accusation or filing a motion to compel to aid in gathering information from North Carolina. Petitioner also asserts that his trial counsel failed to investigate the ten potential witnesses he named who might have helped his defense. Accordingly, petitioner contends that his trial counsel's investigative efforts were deficient under an objective standard of reasonableness. Finally, petitioner argues that there was a reasonable probability that if counsel had conducted an adequate investigation, the outcome in this case would have been different. That is, if petitioner had been able to damage the victims' credibility, he could have gotten a more favorable plea offer or gone to trial and been acquitted.

We have said,

[t]he fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation.

Syl. Pt. 3, *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 416 (1995).

The circuit court did not err in finding that petitioner's counsel's investigation was not ineffective. First, the circuit court properly found that petitioner failed to show that any information helpful to his case would have come from an additional investigation. At the habeas hearing, petitioner's trial counsel testified that he made several attempts to substantiate the statements allegedly made by the victims regarding another man in North Carolina; however, counsel could find no evidence to substantiate that claim. He also testified that hiring an investigator might have helped locate some corroborating information, but he did not believe the cost would be approved given the limited funds the State made available for such an investigator and the fact that an investigator would have to travel to North Carolina. As the circuit court found, "the fact that [trial counsel] was unable to verify that [the victims] had previously made unfounded allegations of sexual misconduct against another man does not prove that [counsel's] investigation was inadequate." In fact, petitioner himself offered no evidence in support of this allegation, nor does he say how he learned of such an allegation. Accordingly, he was entitled to no relief on this issue.

As for petitioner's ten proposed witnesses, in his brief to the Court, petitioner offered no information regarding these persons, i.e., who they were or what their testimony might have been. Thus, petitioner fails to show how any of these proposed witnesses would have changed the outcome of his case. Accordingly, petitioner fails to meet his burden of proof that his counsel's performance was deficient under an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Accordingly, we find he is entitled to no relief in this regard.

Petitioner's second assignment of error is that the habeas court erred by failing to find that petitioner entered an involuntary plea. Relevant to that claim are syllabus points 2 and 3 of *State v. Sims*, 162 W. Va. 212, 248 S.E.2d 834 (1978), in which we held that:

2. The controlling test as to the voluntariness of a guilty plea, when it is attacked either on a direct appeal or in a habeas corpus proceeding on grounds that fall within those on which counsel might reasonably be expected to advise, is the competency of the advice given by counsel.

3. Before a guilty plea will be set aside based on the fact that the defendant was incompetently advised, it must be shown that (1) counsel did act incompetently; (2) the incompetency must relate to a matter which would have

5

substantially affected the fact-finding process if the case had proceeded to trial; (3) the guilty plea must have been motivated by this error.

Petitioner argues that he was forced to take the plea because, due to his counsel's inadequate investigation, his only defense witness was himself. Thus, he pled guilty to his detriment due to his counsel's ineffective assistance. When this issue was raised in petitioner's habeas proceeding, the habeas court found that petitioner failed to demonstrate there was "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Syl. Pt. 6, in part, *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 528 S.E.2d 207 (1999).

First, as we found above, petitioner failed to prove his counsel's investigation was inadequate. Second, we concur with the habeas court's finding that petitioner cannot satisfy *Vernatter*. Petitioner fails to show that any information existed regarding the victims' rumored claim against a perpetrator in North Carolina that would have helped him at trial. Further, the record reveals that petitioner's guilty plea was not motivated by counsel's alleged failure to investigate a rumor. Moreover, by petitioner's own admission, counsel fully advised him of the possible range of sentences he faced if found guilty. Counsel told petitioner that, in his experience, defendants who perform successfully on pre-plea home confinement are likely to be sentenced to home confinement post-plea. Counsel also noted that petitioner's evaluation showed he was at low risk of reoffending. However, counsel clearly advised petitioner that his sentence was wholly up to the court and petitioner acknowledged the same. Here, it appears from the court's comments that it was particularly troubled by petitioner's failure to admit any wrongdoing, which resulted in a more severe sentence than trial counsel anticipated. However, that counsel's best guess regarding sentencing did not come to fruition does not rise to the level of ineffective assistance of counsel or an involuntary plea because counsel clearly advised petitioner that the court might impose a prison sentence as opposed to home confinement.

We have noted that

> [t]he Fourth Circuit Court of Appeals held that "a bad guess by counsel as to what the judge will do does not require revocation of the sentence." Cleckley, I–XIII Handbook on West Virginia Criminal Procedure (citing *United States v. Futeral*, 539 F.2d 329 (4th Cir. 1975); *Vanater v. Boles*, 377 F.2d 898 (4th Cir. 1967)). Furthermore, "an attorney's 'bad guess' as to sentencing is no reason to invalidate a plea on the basis of ineffective assistance of counsel." *Id.* (citing *Little v. Allsbrook*, 731 F.2d 238 (4th Cir. 1984); *United States v. White*, 572 F.2d 1007, 1010 (4th Cir. 1978); *Vanater* at 899–900.) "[A]n erroneous sentence estimate by defense counsel does not render a plea involuntary. And a defendant's erroneous expectation, based on his attorney's erroneous estimate, likewise does not render a plea involuntary." *Allsbrook* at 241(citing with approval *Wellnitz v. Page*, 420 F.2d 935 (10th Cir. 1970)).

*Tomblin v. Mirandy*, No. 16-0432, 2017 WL 1371279, at *5 (W. Va. Apr. 10, 2017)(memorandum decision). Further, the Court, in *Miller v. Pszczolwski*, No. 15-0352, 2016 WL 700634, at *3 (W. Va. (Feb. 9, 2016)(memorandum decision), concluded in a similar case that

petitioner's allegations that counsel misadvised him as to the possibility of consecutive sentences are without merit. Because petitioner's claim that his guilty pleas were involuntary is based on being so misadvised, we accordingly find that claim to lack merit and conclude that the circuit court did not err in finding that petitioner's pleas were voluntarily entered.

Both *Tomblin* and *Miller* are analogous to the instant case and show that, although petitioner's counsel miscalculated how heavily the trial court would weigh petitioner's denial of wrongdoing, such miscalculation does not rise to the level of ineffective assistance of counsel, particularly where counsel informed petitioner that sentencing was wholly up to the court.

Moreover, at petitioner's sentencing hearing, he gave several reasons for pleading guilty which belie this assignment of error.

*The Circuit Court*: Okay. Can you let the [c]ourt know why you decided to take a *Kennedy* plea for more charges than before?

*Petitioner*: Well, because a lot of things happened during this time frame. I mean, I had been basically beat down for, like, two years.

*The Circuit Court*: I understand.

*Petitioner*: 2012, I'm thinking in September, when I went in for my divorce, Judge – think of his name – Robertson sat there on the bench, looked at me and said "Mr. R[.], in my opinion you're guilty, and I'm going to give her what she wants." So I gave up.

Petitioner further testified that he took the plea because he did not have to admit guilt:

*The Circuit Court*: And is that the reason you came around to accepting that plea, was the – even though it contained two counts, it was a plea in which you were not going to be required to acknowledge to the court any specific act of criminal conduct?

*Petitioner*: Yes sir.

*The Circuit Court*: Okay. So from your perspective, Mr. K[.], not from [your counsel's] or anybody else's, but from your perspective, was that the reason you decided to say yes to that *Kennedy* plea offer.

*Petitioner*: Along with being beaten for, like , two years, and to keep the plea, and everything like that, and I didn't have to say I was guilty, I just -- like I said, sir, at the point in time, I was just – I wanted it over.

7

Petitioner's testimony clearly shows that he took a *Kennedy/Alford* plea to end the case without having to admit guilt and not due to any misrepresentations regarding sentencing made by his trial counsel. Accordingly, petitioner's plea was voluntary. Therefore, we reject this second assignment of error.

Petitioner's third and final assignment of error is that the circuit court erred in imposing a more severe sentence than he expected, i.e., he expected home confinement, but was sentenced to prison.

As we have oft said, "'[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.' Syl. pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982)." Syl. Pt. 7, *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995). Here, petitioner's sentences for sexual abuse by a parent, guardian, or custodian, and for incest are within statutory limits and not based on any impermissible factor. Thus, they are not proper for appellate review.

At petitioner's omnibus hearing, he testified that (1) he understood the trial court had the final say in sentencing when he entered his pleas and there was no guarantee that he would be sentenced to home confinement; and (2) his trial counsel told him that a plea was his best option but that he knew that he was free to reject any plea and proceed to trial. Also at the omnibus hearing, petitioner's witness, Deborah S., testified that petitioner's trial counsel told petitioner in her presence about the possible maximum sentences on the two plea counts, and that if he went to trial and lost, he could get the maximum sentence on all seventeen counts. Further, the transcript of petitioner's sentencing hearing shows he was aware of his possible sentence length. Finally, "nothing in *Kennedy* precludes a court from considering at sentencing whether a defendant has accepted responsibility for his crimes." *State v. Keith R.*, No. 13-0768, 2014 WL 1686932, at *2 (W. Va. Supreme Court Apr. 28, 2014). Nor does petitioner cite to any law that precludes a court from considering this issue at sentencing. In fact, in responding to petitioner's direct appeal, the Court explained that it "has identified remorse or the lack thereof as a factor to be taken into account by a trial judge when sentencing a defendant." *Id.* Accordingly, we find no error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** July 30, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman